**SILCO, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CA–3–81–2117–D.

United States District Court, N.D. Texas, Dallas Division.

July 23, 1984.

Raymond J. Martin, Jr., T. Ray Guy, William P. Bowers, Jenkens & Gilchrist, Dallas, Tex., for plaintiff.

Glenn L. Archer, Jr., Asst. Atty. Gen., William W. Guild, Washington, D.C., H. Victor Conrad, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court a civil action for a refund of federal income taxes paid by plaintiff, Silco, Inc. (Silco). The case has been submitted for determination on stipulated facts. Jurisdiction is proper under 28 U.S.C. § 1346(a)(1). Having considered the parties' briefs and the relevant case law, as well as having heard oral argument of counsel, the Court is of the opinion that the claim for refund should be denied. Accordingly, judgment shall be entered in favor of the United States.

1. Silco is a Nevada corporation that maintains its books and records for both financial and federal income tax purposes on the accrual method of accounting. Silco's annual accounting period is the calendar year. The federal income tax periods involved in the case at bar are Silco's taxable years 1972 and 1975.

2. The stock transactions occurred as follows:

| Trade Date | No. of Shares | Price Per Share | Purchase Price |
|---|---|---|---|
| April 23, 1975 | 800 | 71–3/8 | $    57,373.68 |
| April 23, 1975 | 14,200 | 71–1/2 | $1,020,157.08 |
| April 24, 1975 | 200 | 71–5/8 | $    14,486.46 |
| April 28, 1975 | 3,100 | 72–1/4 | $  225,442.92 |
| April 29, 1975 | 200 | 72–1/2 | $    14,611.00 |
| April 29, 1975 | 800 | 72–3/4 | $    58,644.00 |
| April 29, 1975 | 400 | 73 | $    29,422.00 |
| April 30, 1975 | 200 | 72–3/8 | $    14,544.14 |
| April 30, 1975 | 9,800 | 72–1/2 | $  713,887.32 |
| April 30, 1975 | 1,100 | 72–1/4 | $    79,855.27 |
| April 30, 1975 | 3,100 | 72–3/8 | $  225,434.17 |
| Total | 33,900 | | $2,453,858.04 |

### I. Facts and Issue

This is an action to recover corporate federal income taxes and interest thereon assessed against and collected from Silco [1] in the amount of $326,610.92 for the taxable year 1972. That assessment is the result of the Internal Revenue Service's (IRS) disallowance of a capital loss in the amount of $805,125 reported by Silco from a sale of stock.

Between April 23, 1975, and April 30, 1975, Silco purchased 33,900 shares of the LTV Corporation's (LTV) $5 series A cumulative preferred stock (the preferred stock).[2] Goldman Sachs & Co., acting as the broker for Silco, consummated the foregoing acquisition of the preferred stock on the New York Stock Exchange (the Exchange). The preferred stock was traded on the Exchange in accordance with the terms and conditions contained in the listing agreement between the Exchange and LTV.

Prior to Silco's acquisition of any preferred stock, on April 11, 1975, LTV's Board of Directors declared a cash dividend on the preferred stock (the declaration date). This cash dividend consisted of a regular dividend of $1.25 per share and a dividend in arrears of $22.50 per share. At the time of the dividend declaration, the Board of Directors established a "record date" of April 21, 1975 (the record date) and a "payment date" of May 1, 1975 (the payment date) for the dividends. The record date was the date on which LTV identified the shareholders to whom the cash dividends would be paid. The payment date was the date fixed by LTV for the actual distribution of dividends to the shareholders of record on the record date.

LTV notified the Department of Stock List of the Exchange on April 11, 1975, of its declaration of the cash dividend and the declaration date, record date, and payment date thereof, as required by the terms of the listing agreement. With respect to the cash dividend on the preferred stock, the Exchange fixed an ex-dividend date of May 1, 1975 (the ex-dividend date). The ex-dividend date was announced to the public on April 11, 1975.

An ex-dividend date is set by the Exchange for any stock traded thereon to determine who, as between buyers and sellers of listed securities, receives a dividend that has been declared. Pursuant to the rules of the Exchange, when a contract for the purchase and sale of stock is executed prior to the ex-dividend date, the buyer is entitled to the dividend. When a contract for the purchase of stock is executed on or after the ex-dividend date, the seller is entitled to the dividend.

The ex-dividend date fixed by the Exchange normally is the fourth business day preceding the record date set by the corporation. The ex-dividend date is set in this manner so that there is sufficient time to reflect the change in ownership on the corporation's stock books prior to the record date. Thus, the person entitled to the dividend pursuant to the Exchange rules also will generally be the person who actually receives the distribution from the corporation, i.e., the record owner of the stock on the record date. The Exchange, however, will normally postpone the ex-dividend date to the payment date if the cash dividend exceeds by 14% the market value of the stock. The Exchange implements this policy unilaterally without discussion with the corporation declaring and issuing the dividend. The cash dividend declared on the

preferred stock was more than 14% of the trading price of the preferred stock on April 11, 1975, consequently, the Exchange deferred the ex-dividend date to the payment date.

If the ex-dividend date is after the record date and the seller executes a contract for sale of the stock after the record date and prior to the ex-dividend date, the seller, who will still be the shareholder of record, will not retain the dividend. Rather, the seller in that situation will receive the payment of the dividend from the corporation (as the holder of record on the record date), but will be required to remit the dividend that is made through a "due bill," which is delivered to the purchaser. Upon receipt of the dividend, the seller is required to forward the funds to the buyer in satisfaction of the due bill.

Silco purchased the preferred stock after the record date but before the ex-dividend date. The sellers of the preferred stock executed due bills securing Silco's right to receive dividends of $805,125. When LTV paid the dividends on May 1, the sellers paid Silco those dividends. Silco included in its taxable income for 1975 the dividends received of $805,125 less a dividend received deduction of $684,356.25 as permitted by section 243(a)(1)[3] of the Internal Revenue Code (IRC).

On November 21, 1975, Silco sold the 33,900 shares of the preferred stock at $40.50 per share for a total selling price of $1,368,078.04. Silco then reported in its federal income tax return for the taxable year 1975 a capital loss of $1,085,780, which is the amount by which the acquisition cost of the shares of preferred stock exceeded the selling price. Silco reported a net capital loss for the taxable year 1975,

---

**3.** Section 243(a) of the IRC provides:

(a) General rule.—In the case of a corporation, there shall be allowed as a deduction an amount equal to the following percentages of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter:

(1) 85 percent, in the case of dividends other than dividends described in paragraph (2) or (3);

(2) 100 percent, in the case of dividends received by a small business investment company operating under the Small Business Investment Act of 1958 (15 U.S.C. 661 and following); and

(3) 100 percent, in the case of qualifying dividends (as defined in subsection (b)(1)).

which included the amount attributable to the sale of the preferred stock.

Silco had reported a net capital gain for the taxable year 1972. The company filed an application for refund of its federal income tax liability paid for that year, reporting the net capital loss for the taxable 1975 as a net capital loss carryback to 1972 as permitted by section 1212 of the IRC. The IRS initially allowed Silco's application, paying the full amount of refund claimed. Thereafter, however, the IRS disallowed $805,125 of the net capital loss reported by Silco for the taxable year 1975 and assessed Silco with an additional federal income tax of $244,168.09, together with interest thereon of $86,000.08. This disallowance of $805,125 of the net capital loss reported by Silco for the taxable year 1975 resulted from the IRS's reduction of Silco's basis in the 33,900 shares of the preferred stock from $2,453,858.04 to $1,648,733.04, (a decrease of $805,125). This reduction occurred because IRS concluded that Silco acquired two separate assets for the $2,453,858.04: the preferred stock with an adjusted tax basis of $1,648,733.04 and an account receivable with an adjusted tax basis of $805,125. To support that conclusion, IRS asserted that the record owners of the preferred stock on the record date (who were not Silco) were the taxpayers entitled to the dividends and, therefore, the person to include the dividend in income. Accordingly, the IRS concluded that at the times it purchased the preferred stock Silco had purchased that taxpayer's fully earned right to the dividend (the account receivable) and the preferred stock.

On October 29, 1980, Silco paid to the IRS the assessed federal income tax and interest thereon in the amount of $244,-168.09 and $86,000.08, respectively. On April 27, 1981, Silco filed with the IRS a claim for refund for $241,537, together with interest thereon of $85,073.92, stating that the IRS had erroneously and improperly disallowed the capital loss of $805,125. The claim for refund was duly filed in accordance with all applicable provisions of the IRC and the Treasury Regulations promulgated thereunder.

On December 2, 1981, more than six months after the date on which the claim for refund was filed, Silco filed with the United States District Court for the Northern District of Texas, Dallas Division, its Complaint in the case at bar. The IRS formally denied Silco's claim for refund by letter dated December 18, 1981.

The issue presented in this case is whether Silco was the proper taxpayer to report as taxable income the dividends of $805,125 declared and paid on the shares of the preferred stock it purchased. If Silco was the proper taxpayer to report the dividends as income, then it is entitled to the refund sought for the year 1972; if not, then no refund is due Silco for that year.

## II. Arguments of the Parties

### A. IRS's Arguments

The argument of the Government, expressed in Rev.Rule 82-11,[4] 1982-2 I.R.B. 7 and its trial brief, is that Silco did not receive a dividend distribution when it received the $805,125 from the sellers of the preferred stock, but rather that those funds were a return of Silco's payment to the sellers for the right to receive the dividend. It is the Government's position that the dividend income was earned by and must be attributed to the owner of record on the record date. The Government relies upon the Supreme Court opinion in *Estate of Putnam v. Commissioner*, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945), to support this contention. The Government also contends that person is the "true recipient of dividend income, because it is at this time that the corporation becomes legally obligated under state law to distribute a definite sum of money per share to a cer-

---

**4.** Approximately one month after Silco filed this action the IRS issued Rev.Rule 82-11. The IRS concedes that the impetus for the ruling was the transaction at issue in this case. In this situation the ruling is "simply the contention of one of the parties to the litigation, and ... entitled to no greater weight." *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146-47 (5th Cir.1971); Robert W. Minnis, 71 T.C. 1049 (1979).

tain shareholder." Government's Trial Brief at 11. The Government argues that the Exchange rules cannot alter the tax consequences associated with the transaction. Finally, the Government asserts that Silco acquired two distinct assets in expending $2,453,858.04 for the preferred stock: the preferred stock and the right to receive the dividend. Consequently, the Government contends the money received by Silco was not a dividend, but rather "a mere 'return' of basis under Sec. 1001 and Sec. 1012." Government's Trial Brief at 13.

### B. Silco's Arguments

Silco asserts the $805,125 received from the sellers of the preferred stock is dividend income under section 243 of the IRC because the stock was purchased prior to the ex-dividend date. First, Silco contends that Treas.Reg. § 1.61–9(c) should be read in conjunction with the Exchange rules that would determine entitlement. Silco contends this result is required for three reasons: the Exchange rules represent long-standing, nontax motivated administrative procedures; Revenue Ruling 64–68, 1964–1 C.B. 449 supports the conclusion that entitlement is governed by the Exchange rules; and, the Exchange rules reflect the economic substance of the transaction. Second, Silco asserts section 246 of the IRC permits the very tax advantages the Government presently seeks to deny. Finally, Silco contends that under the applicable state law the right to the dividend becomes certain and enforceable on the declaration date, not the record date. Thus, Silco argues that Treas.Reg. § 1.61–9(c) was adopted as an administratively convenient rule for the reporting of income and provides a "commercial transaction" exception to the judicial rule prohibiting the assignment of income.

### III. Analysis

■ The analysis of the issue in this case must begin with Treas.Reg. § 1.61–9(c). Each party in this litigation argues the regulation supports its position. The regulation provides in relevant part as follows:

(c) *Dividends on stock sold.* When stock is sold, and a dividend is both declared and paid after the sale, such dividend is not gross income to the seller. When stock is sold after the declaration of a dividend and after the date as of which the seller becomes entitled to the dividend, the dividend ordinarily is income to the seller. When stock is sold between the time of declaration and the time of payment of the dividend, and the sale takes place at such time that the purchaser becomes entitled to the dividend, the dividend ordinarily is income to him. The fact that the purchaser may have included the amount of the dividend in his purchase price in contemplation of receiving the dividend does not exempt him from tax. Nor can the purchaser deduct the added amount he advanced to the seller in anticipation of the dividend. That added amount is merely part of the purchase price of the stock.

The critical sentence bears repeating: "[w]hen stock is sold between the time of declaration and the time of payment of the dividend, and the sale takes place at such time that the purchaser becomes entitled to the dividend, the dividend ordinarily is income to him." The regulation does not attempt to define entitlement. Consequently, the parties have developed arguments resolving when a purchasing shareholder is entitled to the dividend.

At the outset it is important to observe that the tax benefits claimed by Silco from the purchase and sale of the preferred stock (the dividend earned deduction and the subsequent capital loss) are generally permitted by the IRC. *See* IRC section 243. If Silco had purchased the preferred stock on April 14 or any day prior to the record date (assuming the transaction was made in time to effect the appropriate ownership change on the books), there would be no question whether Silco had received a dividend distribution. The dividends would have been paid directly to Silco, the record owner. After a later sale Silco would have received: (i) dividend income against which it could take a deduction for 85% of the amount received under section 243, and (ii)

a loss in approximately the same amount, which would be offset against capital gains. Provided Silco satisfied the holding period requirement of section 246, the IRC would unquestionably permit the claimed tax treatment.

### A.

The IRS contends Silco is not entitled to the foregoing tax benefits because Silco did not receive dividend income from the transaction. According to the IRS, the dividend income is attributable only to the owner of record on the record date. The IRS's first argument in support of this contention is that under the relevant state law (Delaware) the record date is the time the corporation becomes legally obligated to pay the dividend. Silco vehemently disputes this interpretation of Delaware law, for good reason. Both parties cite as controlling *Selly v. Fleming Coal Co.*, 37 Del. 34, 180 A. 326 (1935), and *Kraft Foods Co. v. Commissioner*, 232 F.2d 118 (2d Cir.1956). This Court, after reviewing those cases, concludes that Silco's reading of those cases is more accurate. As far as the time the right to a dividend is created, those cases seem to hold that the declaration date creates the right. In *Selly, supra*, the court noted: "[i]n most cases the right set up in the stockholders is an irrevocable right and the declaration of the lawful dividend creates an obligation of the corporation and there exists a right of action on the part of the stockholder to enforce its payment. The right of action is in the nature of a contract and grows out of the declaration of a lawful dividend." Consequently, this Court concludes that if the state law creating a right to the dividends is controlling, that time would be the declaration date.

■ The better argument by the IRS in support of its contention that the owner on the record date must recognize the dividend income is the Supreme Court opinion in *Estate of Putnam v. Commissioner*, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945). In that case the Court interpreted section 42 of the Revenue Act of 1938,

which required that a decedent's last tax return include all items of income accrued up to the date of his death, regardless of the decedent's method of accounting. The decedent died owning stock on which dividends had been declared, but the date of death preceded the record date. The issue was whether those dividends must be included in the decedent's last income tax return or in the estate tax return. The Court first rejected the argument that the state law governing when a corporate debt arises controlled the determination of when the income accrued, writing: "[w]e think Federal law controls. A Federal revenue act applicable throughout the nation fixes liability on the decedent taxpayer under § 42 if the dividend is 'accrued.'" 324 U.S. at 395, 65 S.Ct. at 812.

The Court then turned to the question of whether a dividend accrues on its declaration date or at a later time. The Court held:

... This Court has suggested that a tax be deemed to accrue as a charge against a taxpayer when events "occur which fix the amount of the tax and determine the liability of the taxpayer to pay it." *United States v. Anderson*, 269 US 422, 441, 70 L ed 347, 351, 46 S Ct 131 [1926]. It has said also that accrual imports "that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income." *Spring City Foundry Co. v. Commissioner of Internal Revenue*, 292 US 182, 184, 78 L ed 1200, 1203, 54 S Ct 644 [1934]. The declaration of the dividends here in question fixes their amount but does not determine the distributee. He cannot be known with certainty until the record date. Nor does the stockholder have the right to receive payment upon the declaration. The words of the corporate resolution which arranges for the payment from the stock record of a certain day determines the earliest time for possible receipt.

Under the income tax acts no stockholder has a separate and divisible taxable interest in the assets of a corporation

even though those assets have been increased by earnings. Earnings, before declaration of dividends, while increasing the value of his stock, have never been treated as an event to mark taxable income to the stockholder. Mere declaration of a dividend does not alter the stockholder's interest in the corporate assets. If no other factors were involved in value except earnings and dividends, the value of the stock would advance pari passu with earnings and the declaration of a dividend with a subsequent record date for payment would not affect the stock's value. *United States v. Phellis,* 257 US 156, 171, 66 L ed 180, 184 42 S Ct 63 [1921]. See Schabacker, Stock Market, 353. The stockholder can acquire no interest in a dividend, amounting to an accrual under § 42, before the amount of the dividend and the distributee is determined.

*Id.* 324 U.S. at 398–99, 65 S.Ct. at 813–14. Thus, the Court concluded that the first estate tax return should include the dividend amounts.

Silco attempts to distinguish *Estate of Putnam* on a number of grounds. First, Silco asserts the Court was interpreting section 42 of the 1938 Act, not Treas.Reg. 1.61–9(c). Second, Silco contends the Court held only that income did not accrue on the declaration date, not that it definitely accrued on the record date. Finally, Silco argues that the issue in *Estate of Putnam* was the time that an identified taxpayer recognized income, not the person to whom the income should be attributed. *See Estate of Smith v. Commissioner,* 292 F.2d 478, 480 (3d Cir.1961), *cert. denied,* 368 U.S. 967, 82 S.Ct. 438, 7 L.Ed.2d 395 (1962).

This Court is not persuaded by any of these arguments. In *Estate of Putnam* the Supreme Court identified the factors relevant to an analysis of when dividend income is recognized. The Court noted that before income could be accrued there must be both a definite amount to be distributed and an identified taxpayer to receive the distribution. The Court noted that the amount was set on the declaration date, but it was not until the record date that the taxpayer was identified. This broad principle of income recognition must be applied to Treas.Reg. 1.61–9(c) as well as section 42 of the 1938 Act.

Silco also argues that *Estate of Putnam* can be distinguished in this case in the same manner as the Third Circuit distinguished the case in *Estate of Smith v. Commissioner,* 292 F.2d 478, 480 (3d Cir. 1961), *cert. denied,* 368 U.S. 967, 82 S.Ct. 438, 7 L.Ed.2d 395 (1962). In *Estate of Smith* the directors of a personal holding company declared on April 17, 1953, a dividend to be paid on May 10, 1953, to the owners of record on that date. On May 9, 1953, the principal shareholders gave a part of the stock to their children, who received the dividends and reported the income. In deciding whether the parents or the children recognized the income, the court held that New Jersey state law applied to determine the rights of the shareholders. The court concluded that the principal shareholders had acquired a vested right to receive the payment of the dividend upon declaration and should therefore recognize the income. The court distinguished *Estate of Putnam,* finding that opinion to "indicate merely that, even if the parents here had themselves retained the stock and received the dividends they would properly have accounted for this income in the year of distribution rather than the year of declaration, assuming the two had been different." 292 F.2d at 480.

The court's distinction is somewhat tenuous, because the question of *timing* will frequently (as here) determine the question of the owing taxpayer. The result in *Estate of Smith,* however, is easy to defend on other grounds. That is, any other result in *Estate of Smith* would violate the well established rule against assigning income. In *Helvering v. Horst,* 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), the Supreme Court ruled that a father, who detached negotiable interest coupons from bonds shortly before the due date of the coupons and gave them to his son, realized the interest income from the coupons. Follow-

ing that decision the Tax Court, in *Estate of Bertha May Holmes*, 1 T.C. 508 (1943), held that same principle applied when the interest bearing property is transferred along with the right to receive the interest. Similarly, in *Estate of Smith*, the stockholders could not shift the tax burden to a family member by transferring the stock prior to the record date.

Aside from the holding in *Estate of Putman*, attributing the income to the owner on the record date is logical. It is that person who receives the dividend check from the corporation. Further, it is that person who might have to sue to enforce the right to the dividend if the company for some reason failed to pay. The record date gives certainty to the tax consequences, as opposed to the ex-dividend date, which can be manipulated by the Exchange.

### B.

Silco argues that the taxpayer entitled to the dividend for purposes of Treas.Reg. § 1.61–9(c) should be the taxpayer entitled to the dividend pursuant to the rules of the Exchange. Stated again, under these rules when a contract for the sale of stock is executed prior to the ex-dividend date, the buyer is entitled to the dividend. The Exchange normally sets the ex-dividend date as the fourth business day preceding the record date. In the normal situation when a purchaser executes a contract prior to the ex-dividend date, that purchaser will be the shareholder of record on the record date and will receive the dividend. When, how-

ever, the cash dividend is greater than 14% of the value of the stock, the Exchange will normally delay the ex-dividend date until the payment date. Whenever the ex-dividend date is set after the record date and a contract is executed between the record and ex-dividend dates, the seller receives direct payment of the dividends from the corporation. The seller must then remit the dividend to the purchaser.

No particular authority supports Silco's assertion that Treas.Reg. § 1.61–9(c) adopts the Exchange rules to determine entitlement. In support of its argument Silco asserts: (1) the Exchange rules represent long-standing rules applied by the Exchange uniformly and without consideration of the tax consequences; (2) Rev.Rule 64–68 supports the conclusion that entitlement is governed by the Exchange rules; and (3) the Exchange rules represent the economic substance of the underlying transactions. The Court shall address these arguments seriatim.

The fact that the Exchange rules are consistently applied and developed for nontax motives does not control the federal tax consequences of a transaction occurring on the Exchange. The rules are promulgated to facilitate transactions in securities and to protect investors and the public interest. There is no grant of authority to the Exchange to develop tax regulations or policy.

Silco also contends Rev.Rule 64–68 [5] establishes that the IRS has adopted the Ex-

---

**5.** Revenue Ruling 64–68, 1964–1 C.B. 449 provides:

When stock is sold prior to the ex-dividend and record dates, but not transferred to the name of the purchaser prior to the record date, the dividend on such stock may be paid to a person other than the purchaser (the actual owner of the dividend). Where the stock is traded through several dealers, the dividend is claimed by each dealer in turn and is passed on to the new owner. *Held,* an information return on Form 1087 should be filed by the ultimate dealer who sold the stock to the purchaser and actual owner of the dividend.

Advice has been requested concerning the requirement for filing Form 1099, U.S. Informa-

tion Return, or Form 1087, Nominee's Information Return, under the circumstances described below.

A, a dealer in securities, purchased 100 shares of X corporation stock from his customer, B, on January 15, 1963. The stock was traded with a $50 dividend payable to the owner of record as of February 1, 1963. Dealer A sold the stock to dealer C, who, in turn, sold the stock to his customer, D. The stock certificate was not transferred from customer B before the record date and he received the $50 dividend. Dealer A claimed and received the dividend from customer B. Dealer C claimed and received the dividend from dealer A and paid the dividend to customer D, the true owner of the dividend.

The issue presented is whether dealer A (broker for the seller), customer B, or dealer C

change rules to determine entitlement under Treas.Reg. 1.61–9(c), and that this administrative pronouncement has achieved the status of law. In Rev.Rule 64–68 a contract for sale of stock was executed after a dividend was declared and prior to the ex-dividend date and the record date. The contract was not settled, however, until after the record date. The selling shareholder, therefore, was the shareholder of record on record day and received the dividend. The ruling held that the purchaser was the proper taxpayer to recognize the dividend although he did not receive the dividend directly from the corporation.

The IRS argues that the facts described in Rev.Rule 64–68 differ from the facts of the case *sub judice* because in that ruling the sale was made prior to the record date. Silco contends this fact is inconsequential because the position taken by the IRS in this litigation is that the shareholder of record on the record date is the only taxpayer who can receive dividend income. This Court does not understand the IRS to be refuting Rev.Rule 64–68 in this case. The IRS here is taking the position that the purchaser after the record date does not receive dividend income. The dividend income, according to the IRS, is accrued at the record date by those stockholders then of record. This Court finds that Rev.Rule 64–68 does not control this case.

Silco contends the Exchange rules reflect the economic substance of the transaction and should be controlling for that reason. Any other result, according to Silco, exalts form over substance. The basis for Silco's argument is that no significant change in the value of the stock occurs on the record date. The value of the dividend is reflected in the stock price immediately after declaration; the stock stays near that price until the ex-dividend date, when the price drops nearly the amount of the dividend.

Silco's analysis of the economic reality is correct. Nothing of significance happens to the stock price on the record date. It does not necessarily follow, however, that Silco's interpretation of Treas.Reg. 1.61–9(c) must be adopted. For the purposes of income taxation recognition, there must be a definite amount payable to a definite taxpayer. The second of these requirements cannot be satisfied until the record date. *See Estate of Putnam, supra.* Consequently, in spite of the date of economic significance, entitlement is more appropriately determined by the record date if it is the date that satisfies the identification requirements of tax recognition.

## C.

Silco also argues that section 246 [6] of the IRC "reflects congressional sanction" of

(broker for the buyer) must file either a Form 1099 or a Form 1087 under section 6042 of the Internal Revenue Code of 1954.

Under the provisions of section 1.6042–2(a)(1)(ii) of the Income Tax Regulations, every person who during a calendar year after 1962 receives payments of dividends as a nominee on behalf of another person aggregating $10 or more shall make an information return on Forms 1096 and 1087 for such calendar year showing the aggregate amount of such dividends, the name and address of the person on whose behalf received, the total of such dividends received on behalf of all persons, and such other information as is required by the forms.

In most cases, transactions involving sales and purchases of stock are entered into between investor and dealer, rather than investor and investor, and the seller is not able to ascertain who is the true owner or purchaser so he cannot furnish the information required for Form

1087. See Revenue Ruling 57–567, C.B. 1957–2, 609, at 610.

On the other hand, the dealer for the purchaser, C, has the necessary information about the purchaser and is able to provide all the information required for the Form 1087.

Accordingly, the requirements of section 1.6042–2(a)(1)(ii) will be complied with, under the circumstances presented above, if C, the dealer for the purchaser of securities, filed the Form 1087 required thereunder.

Furthermore, an information return of Form 1099 need not be filed by dealer A or C, or customer B, under these circumstances.

**6.** Section 246 of the IRC provides in pertinent part:

(a) Deduction not allowed for dividends from certain corporations.—The deductions allowed by sections 243, 244, and 245 shall not apply to any dividend from a corporation which, for the taxable year of the corporation in which the distribution is made, or for the

the tax treatment Silco claims on the stock transaction in question, so long as the holding period stated therein is satisfied. Further, Silco asserts the reference in section 246 to the ex-dividend date "indicates congressional recognition that the ex-dividend date is the date of economic significance for stock transactions on an exchange." Silco's Trial Brief at 34.

As the Court pointed out previously, the IRC permits the tax treatment claimed by Silco if Silco were entitled to the dividend under Treas.Reg. 1.61–9(c). The dispute in this case, however, is over entitlement, because Silco was not the record owner on the record date. Section 246 does not alter the analysis of which person, the buyer or the seller, is entitled to the dividend for tax purposes. The fact that the statute measures the holding period from "the date on which such share becomes ex-dividend" does not persuade this Court Congress intended to legislate the ex-dividend date as the date of entitlement.

### D.

Silco's final argument is woven from threads of other arguments previously discussed. Basically, Silco contends that dividend income is earned on the declaration date and Treas.Reg. 1.61–9(c) permits a taxpayer in a commercial transaction to assign dividend income. Silco argues this treatment provides an administratively convenient rule by which corporations and shareholders may compute and report dividend income.

Most of these contentions have been addressed previously in the opinion. To reiterate, the Court notes the meaning of Treas.Reg. 1.61–9(c) turns on the meaning of entitlement. Further, Silco's conclusion that dividend income is earned on the declaration date cannot be squared with the Supreme Court's decision in *Estate of Putnam, supra.*

Finally, with respect to Silco's contention that administrative convenience would be fostered by allowing the Exchange rules to control entitlement, the Court disagrees. First, it is doubtful that administrative convenience can control the recognition of income. More importantly, however, the Court finds that attributing dividend income to the record owner on the record date provides the fewest administrative problems. The person to whom the dividend checks are sent will be the taxpayer who must report the dividend income. Records would exist in the corporation's books identifying the taxpayer who should report the income. Clearly, administrative

next preceeding taxable year of the corporation, is a corporation, exempt from tax under section 501 (relating to certain charitable, etc., organizations) or section 521 (relating to farmers' cooperative associations).

\*     \*     \*     \*     \*     \*

(c) Exclusion of certain dividends.—

(1) In general.—No deduction shall be allowed under section 243, 244, 245, in respect of any dividend on any share of stock—

(A) which is sold or otherwise disposed of in any case in which the taxpayer has held such share for 15 days or less, or

(B) to the extent that the taxpayer is under an obligation (whether pursuant to a short sale or otherwise) to make corresponding payments with respect to substantially identical stock or securities.

(2) 90-day rule in the case of certain preference dividends.—In the case of any stock having preference in dividends, the holding period specified in paragraph (1)(A) shall be 90 days in lieu of 15 days if the taxpayer receives dividends with respect to such stock which are attributable to a period or periods aggregating in excess of 366 days.

(3) Determination of holding periods.—For purposes of this subsection, in determining the period for which the taxpayer has held any share of stock—

(A) the day of disposition, but not the day of acquisition, shall be taken into account.

(B) there shall not be taken into account any day which is more than 15 days (or 90 days in the case of stock to which paragraph (2) applies) after the date on which such share becomes ex-dividend, and

(C) paragraph (4) of section 1223 shall not apply.

The holding periods determined under the preceding provisions of this paragraph shall be appropriately reduced (in the manner provided in regulations prescribed by the Secretary) for any period (during such holding periods) in which the taxpayer has an option to sell, is under a contractual obligation to sell, or has made (and not closed) a short sale of, substantially identical stock or securities.

convenience would be advanced by the IRS's interpretation.

### IV.  Conclusion

The Court is of the opinion that Silco is not entitled to a refund of the corporate taxes sought herein.  Judgment should be entered in favor of the United States.

It is so **ORDERED.**