**SILCO, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 84–1732.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1986.

Rehearing Denied March 3, 1986.

▆

Jenkins & Gilchrist, Patrick E. Mitchell, William P. Bowers, Dallas, Tex., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., David English Carmack, Michael L. Paup, Chief, John A. Dudeck, Jr., Tax Div.; U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, and BROWN, and GEE, Circuit Judges.

PER CURIAM.

Appellant Silco, Inc., appeals a district court decision denying its recovery of corporate federal income taxes and interest. The Internal Revenue Service (IRS) assessed these taxes against Silco when it determined that Silco improperly reported dividends on stock purchased after the corporate record date as income. The issue turns on whether the term "entitled" in the applicable Treasury Regulation is defined by (1) the stock exchange rules which follow the economic reality of the subject stock sales transactions or, (2) by the legal status conferred by corporate stock dividend declarations. We hold the agency could reasonably adopt either construct. Because the only public evidence of the agency's choice at the time of Silco's purchase—published revenue rulings—indicated the IRS considered the buyer to be the actual owner of such dividends and the proper party to report them as income, we reverse.

## I

The LTV Corporation (LTV) declared a cash dividend on a series of its preferred stock on April 11, 1975. LTV's Board of Directors established a "record date" of April 21, 1975, and a "payment date" of May 1, 1975 for the dividend. On the record date, LTV closed its stock transfer books and identified the holders of record on that date as the parties entitled to receive the cash dividends. On the payment date, LTV distributed the dividends to those so identified.

LTV's stock was traded on the New York Stock Exchange (the Exchange). The rules of the Exchange fixed an "ex-dividend date" which determined whether the buyer or seller would receive the dividends paid on stock traded on the Exchange. According to the Exchange rules, the buyer receives the dividend when a stock sale contract is executed before the ex-dividend date. The seller receives the dividend when the contract is executed on or after the ex-dividend date.

The Exchange usually fixes the ex-dividend date on the fourth day before the corporation's record date. Thus, in any usual case, the holder of record who actually receives the dividend from the corporation and the party entitled to the dividend under the Exchange rules are the same. If the cash dividend amounts to fourteen percent or more of the market value of the

stock, however, the Exchange normally postpones the ex-dividend date until the payment date. This delay avoids the economic burden an owner on the ex-dividend date suffers if required to wait until the payment date to realize the decline in value of the stock that follows the shift of such a large dividend. When a stock sales contract is executed after the record date in these circumstances, the seller, who is the holder of record on the record date, receives the dividend from the corporation but must remit the dividend to the purchaser. The seller does this by executing a due-bill to the buyer at the time of sale and then transferring funds to satisfy that due-bill.

The dividend LTV declared on its preferred stock exceeded fourteen percent, so the Exchange fixed the ex-dividend date for May 1, 1975, the payment date. Silco, Inc., purchased 33,900 of these shares between April 23 and 30, 1975, after the record date but before the ex-dividend and payment dates. The seller received the dividends from LTV and then remitted the appropriate amounts to Silco. Silco reported the dividends, less a dividend received deduction, as taxable income on its 1975 return. Silco also reported a net capital loss for 1975, which included a loss it incurred on the sale of the LTV shares in November, 1975.

When Silco attempted to offset its 1975 net capital loss against a prior net capital gain, the IRS disallowed the net capital loss to the extent of the LTV dividends. The IRS asserted that the holder of record on the record date was the party entitled to receive the dividends and required to report them as income, and assessed additional federal taxes and interest against Silco. Silco paid these taxes and filed for a refund, claiming the IRS erroneously disallowed the capital loss. Relying principally on *Putnam's Estate v. Commissioner,* 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945), the district court, 591 F.Supp. 480, held that Silco was not the proper party to report the dividend as income and was not entitled to a refund. Silco appealed from this ruling.

## II

Both parties agree that Treas.Reg. § 1.61–9(c) determines whether a buyer or seller of stock is the proper taxpayer to recognize a dividend on that stock for federal tax purposes. That regulation provides in pertinent part:

When stock is sold after the declaration of a dividend and after the date as of which the seller becomes entitled to the dividend, the dividend ordinarily is income to the seller. When stock is sold between the time of declaration and the time of payment of the dividend, and the sale takes place at such time that the purchaser becomes entitled to the dividend, the dividend ordinarily is income to him.

The regulation fails to define the key term, "entitled," which determines whether Silco or the seller was the proper taxpayer to report the LTV dividends.

Silco asserts that the owner on the ex-dividend date is entitled to a declared dividend for purposes of Treas.Reg. § 1.61–9(c). Silco relies primarily on the economic reality of the Exchange sale transaction. Silco argues that the Exchange rules fix a date which controls the economic reality of stock sale transactions made on the Exchange. The Exchange establishes these rules in advance of any transaction and designs them without regard to federal tax consequences. The market price immediately following the declaration always includes a premium for the dividend. The lowered market price on the ex-dividend date reflects the fact that the dividend is no longer available to the owner or buyer. No significant change in price occurs on the record date, so that date should not be determinative of dividend entitlement. The Exchange rules provide a consistent method for fixing this controlling date for two separate categories of dividends—those above or below a percentage of the value of the stock fixed by the Exchange. The below fourteen percent dividend rule creates no problem since it coincides chrono-

logically with the record date which determines the right to receive the dividend for corporate record keeping purposes. Only those dividends that equal or exceed fourteen percent of the value of the stock fall under the high dividend Exchange rule designed to prevent the large swings in the value of stock that result when the record date precedes the payment date. According to Silco, determining entitlement by the ex-dividend date for tax as well as Exchange trading and pricing purposes reflects the economic realities of such transactions rather than exalting form over substance.

The United States, on the other hand, relies primarily on a corporate title theory. According to the government, the holder of record on the record date is entitled to receive the dividend and must report it as income under Treas.Reg. § 1.61–9(c). The stockholder who officially owns the stock on the record date is legally entitled to be paid a dividend by the corporation. Exchange rules do no more than entitle a post-record date purchaser to an account receivable. Although this account is equal in amount to the dividend the seller has received from the corporation, it is not the dividend. The Exchange rules do not apply to private sales of stock. The concept of entitlement is analogous to that of "accrual" discussed in *Putnam's Estate v. Commissioner*, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945). Once the recipient and the amount of the dividend are identifiable, income accrues and entitlement is determined. Thus, entitlement to dividends is fixed solely by corporate title.

The district court held that the principles of income recognition articulated by the Supreme Court in *Putnam's Estate* apply to Treas.Reg. § 1.61–9(c) and indicate that the record date is determinative of dividend entitlement. In *Putnam's Estate*, several corporations declared dividends before Putnam died, but paid the dividends to holders of record on dates subsequent to his death. 324 U.S. at 395, 65 S.Ct. at 812. According to section 42 of the Revenue Act of 1938, the decedent taxpayer was liable for taxes on the dividend if the dividend "accrued" as

income before his death. *Id.* The Court held that accrual does not occur "before the amount of the dividend and the distributee is determined." *Id.* at 399, 65 S.Ct. at 814. "[A] right to receive or an obligation to pay" are accrual requirements which the mere declaration of a dividend with a subsequent record date does not provide. *Id.* at 400, 65 S.Ct. at 814–15. The estate, rather than the stockholder who died before the record date, was liable for dividends declared before the stockholder's death. The Court specifically noted that it did not decide "whether [a dividend] accrues on its record date or its payment date." *Id.* at 398, 65 S.Ct. at 813. By implication, therefore, a dividend may accrue to a holder of record on the date a corporation declares a dividend payable to holders of record on that date even though the payment date comes later. Of course, no stock exchange was involved in the transfer.

The district court rejected Silco's attempts to distinguish *Putnam's Estate* from the entitlement concept under Treas. Reg. 1.61–9(c), including Silco's reliance on *Estate of Smith v. Commissioner*, 292 F.2d 478 (3d Cir.1961), *cert. denied*, 368 U.S. 967, 82 S.Ct. 438, 7 L.Ed.2d 395 (1962). In *Smith*, a corporation declared a dividend to be paid to the holders of record on the subsequent payment date. On the day before the joint record-payment date, certain stockholders gave stock to their children and the children then received the dividends and reported them as income. 292 F.2d at 478–49. Again, the transfers did not involve purchases or sales made through a stock exchange. The Tax Court assessed deficiencies against the parents and the Third Circuit affirmed. *Id.* at 479–81.

The court first noted that state law determined the property rights created by the declaration of the dividend, while federal law merely attached tax consequences to those rights. *Id.* at 479. Under New Jersey law, the stockholders acquired vested rights to payment on the declaration date which they transferred to their children.

Relying on *Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), the Third Circuit held that the donor of the right to receive the dividend was the party legally required to pay taxes on it in this intra-family gift situation. 292 F.2d at 479–81. The court stated that "each parent here realized the economic benefit he wished to derive from his dividend rights through his gift, followed almost immediately by the corporation's payment to his child. Such dealing by a parent with his vested right to a lawfully declared dividend, is not significantly different from the gift of negotiable interest coupons in the Horst case." *Id.* at 479–480.

The Third Circuit also distinguished *Putnam's Estate* and Silco argued it was similarly distinguishable from the case at bar. The *Smith* court found that *Putnam's Estate* determined when the proper taxpayer should report a particular dividend and not which party was the proper taxpayer. *Id.* at 480. *Putnam's Estate* "indicate[d] merely that, even if the parents ... had themselves retained the stock and received the dividends they would properly have accounted for this income in the year of distribution rather than the year of declaration, assuming the two had been different." *Id.*

### III

The district court correctly refused to rely on *Smith.* That case did not deal with the tension between corporate legal rights and stock exchange rule entitlement. *Smith* held that a stockholder of record on the date a corporation declares a dividend cannot avoid a tax on the amount of the dividend by giving the stock to his children before the payment date. That situation is not analogous to the Silco purchase, and neither is the distinction drawn by the Third Circuit with regard to *Putnam's Estate* and the family gift situation.

For similar reasons, *Putnam's Estate* is equally inapplicable to the Silco purchase. It does not deal with corporate rights versus stock exchange entitlement. It addresses the very specific question of "accrual" with regard to the tax liability of a stockholder vis-a-vis his estate where the stockholder dies after the declaration of the dividend but before the record date. The *Putnam's Estate* transaction was not comparable to the Silco purchase which was controlled by stock exchange rules.

The separate theories advanced by Silco and the government are equally persuasive interpretations of "entitlement." One provides as much certainty for buyers and sellers of stock as the other. Appropriate economic or legal concepts provide a sound basis for each theory. Since no court has interpreted the effect of Treas.Reg. § 1.61–9(c) on transactions occurring after the corporate record date and before a stock exchange's postponed ex-dividend date, this court should apply the interpretation followed by the IRS on the date of the purchase in question.

### IV

Treas.Reg. § 601.601(e) provides that taxpayers may generally rely on published revenue rulings in determining the tax treatment of their own transactions, if the facts and circumstances of their transactions are substantially the same as those that prompted the ruling. In the absence of statute, regulation or case law to guide our decision, we look to the published position of the IRS on the tax treatment of dividends on stock purchased before the ex-dividend date at the time Silco purchased the LTV shares. The parties have identified only two revenue rulings which reflect this position.

In Rev.Rul. 64–68, 1964–1 C.B. 449, dealer A purchased stock from his customer, B, prior to the corporate record and stock exchange ex-dividend dates for a declared dividend on the stock. A then sold the stock to dealer C, who sold it to customer D. B was still listed as the owner on the record date, so B received the dividend from the corporation. B then transferred the dividend to A, who transferred it to C, and C transferred it to D. The IRS referred to D as the "true owner of the dividend," and held that dealer C, the broker for the buyer, was the appropriate party to file an information return rather than dealer A, the broker for the seller. The

IRS noted that the dealer for the purchaser would have the necessary information about the purchaser, while the seller might not know who the true owner is.

In Rev.Rul. 57–567, 1957–2 C.B. 609, a nonresident alien sold stock on which a dividend had been declared to a resident citizen purchaser through the New York Stock Exchange prior to the record and ex-dividend dates. The purchaser did not become the holder of record in time to receive the dividend, and the corporation distributed the dividend to the seller, withholding taxes as if the actual owner of the dividend were a nonresident alien. Pursuant to the Exchange rules, the seller issued a due-bill to the buyer. As a result, the purchaser was entitled to receive the full declared dividend from the seller under the Exchange rules, but the seller received less than that amount from the corporation because the corporation withheld nonresident alien taxes. Again, the IRS considered the purchaser the true owner of the dividend, for it defined the issue as follows: "Inasmuch as the owner of the income was not a resident alien and no tax need have been withheld, the basic question presented is [whether the seller or the withholding agent] is the proper [party] to recover such withheld amount." The IRS also referred to the resident buyer as the "actual owner of the income." Its ultimate holding turned on whether the withheld funds had been remitted to the IRS. By implication, the Service considered the buyer the true owner of the stock responsible for reporting the dividend income and paying taxes on it. *See also* Rev.Rul. 61–207, 1961–2 C.B. 139 (referring to "the purchasing shareholder" as "the taxpayer" and to the dividend as "payment not constituting income in the hands of the recipient [nonresident alien seller]" in a discussion of Rev. Rul. 57–567).

The facts behind these two rulings are not identical to those in the case at bar. They do, however, provide the only insight available to a taxpayer at the time of the Silco transaction as to the conceptual approach the IRS would use to determine the tax consequences of stock sale transactions which are subject to stock exchange rules and which occur after the corporate declaration and record dates for a dividend, but before the exchange ex-dividend date. Although a ruling published after this transaction is contrary, Rev.Ruls. 64–68 and 57–567 suggested to buyers at the time of Silco's purchase that the IRS would adhere to an economic reality theory.

Rev.Rul. 82–11, 1982–1 C.B. 51, indicates that the policy of the IRS is now different. Under this ruling, which will control future transactions, a purchaser in Silco's position may not report the dividends as income and take the dividends received deduction on that amount, even though the seller signed an agreement stating that the purchaser was "entitled" to the dividends pursuant to the rules of a stock exchange. When Silco bought the LTV shares, however, it could rely on Rev.Ruls. 64–68 and 57–567 to determine that it was the "actual owner" of the dividends and the proper party to report them as income. The IRS improperly denied Silco's capital loss and assessed additional taxes against it.

The judgment appealed from is reversed and the cause is remanded with directions to require the parties to calculate Silco's proper tax liability in accord with the treatment to be given this transaction under the above opinion.

REVERSED AND REMANDED.