DEAN R. SHORE AND WILMA V. SHORE, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5225–75.      Filed February 13, 1978.

*Richard W. Dietrich,* for the petitioners.
*Vernon R. Balmes,* for the respondent.

OPINION

IRWIN, *Judge:* The Commissioner determined a deficiency of $53,903 in petitioners' joint Federal income tax for the calendar year 1970.

The issue posed is one of first impression. It is whether the incorporation of a sole proprietorship causes a cessation of the trade or business of the individual proprietors within the meaning of Rev. Proc. 67–10, 1967–1 C.B. 585, as amplified by Rev. Proc. 70–16, 1970–1 C.B. 441, so as to require the inclusion of the balance of the section 481[1] adjustment as income in the year of incorporation.

All of the facts have been stipulated. The stipulation of facts along with attached exhibits are incorporated herein by this reference.

Petitioners Dean R. Shore and Wilma V. Shore, husband and wife, resided in Fresno, Calif., at the time of filing their petition herein. They filed a joint Federal income tax return for the calendar year 1970 with the District Director of Internal Revenue for the Northern District of California.

From 1961 to July 16, 1970, petitioners owned and operated Shore Acoustical & Insulation Co., a sole proprietorship engaged in the acoustical and insulation contracting business. In the taxable year ending December 31, 1968, petitioners changed their overall method of accounting from the cash receipts and disbursements method to the accrual method in accordance with Rev. Proc. 67–10, *supra,* as amplified by Rev. Proc. 70–16, *supra.* As a result of said change, the sole proprietorship realized a net adjustment (increase) in income under section 481 of $142,994.43 for the year 1968. However, in accordance with the above cited revenue procedures, petitioners were only required to report one-tenth of this amount ($14,299) for the year 1968 and a like amount in each of the following 9 years.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.

On July 16, 1970, petitioners incorporated their sole proprietorship in a tax-free transfer under section 351 to form Dean R. Shore, Inc. One hundred percent of the stock of Dean R. Shore, Inc., was issued to petitioners in exchange for their transfer of the net assets of Shore Acoustical & Insulation Co. From the time of incorporation to the present the former business of the proprietorship has been operated by the corporation.

Mr. Shore has continued as president and chief operating officer of the corporation since its incorporation in 1970. Petitioners have continued to own 100 percent of the stock of the corporation since that time and the corporation is neither a partner nor a joint venturer in any other business. Petitioners have not engaged in the acoustical and insulation contracting business as individuals since the incorporation of Dean R. Shore, Inc. They have continued to report one-tenth of the adjustment on their individual returns during the period subsequent to incorporation.

The question presented is whether incorporation of a sole proprietorship causes a cessation of the business of the sole proprietors within the meaning of Rev. Proc. 67–10, *supra,* as amplified by Rev. Proc. 70–16, *supra,* [2] so as to require them to report as income the balance of the section 481 adjustment (that portion not previously taken into account as income) in the year of incorporation.

Rev. Proc. 67–10, *supra,* as amplified by Rev. Proc. 70–16, *supra,* 1970–1 C.B. at 441—

provides an administrative procedure whereby taxpayers may expeditiously obtain consent to change their overall method of accounting from the cash receipts and disbursements method to an accrual method for Federal income tax purposes. Taxpayers complying with the provisions hereof will be deemed to have obtained the consent of the Commissioner of Internal Revenue to change their method of accounting.

One of the conditions for utilizing this administrative procedure is—

A taxpayer who has changed his method of accounting under the provisions of Revenue Procedure 67–10 and ceased to engage in a trade or business (otherwise than in a transaction to which section 381 of the Code applies)

---

[2] Both parties erroneously argue that the provision in issue is sec. 481(b)(4)(C)(i). However, while that statutory provision did utilize phraseology identical to that now in issue, it was not effective in 1970, the year in dispute, its application having terminated for taxable years beginning after 1963. Sec. 481(b)(4)(D).

during the ten-year period over which the adjustment is to be spread must attach a statement to the Form 3115 filed with the return for the taxable year in which he ceased to engage in a trade or business showing the balance of the adjustment not previously taken into account in computing taxable income as the portion of the adjustment to be taken into account in that year. [Rev. Proc. 70–16, *supra*, 1970–1 C.B. at 442.]

The Commissioner is granted the authority to prescribe such conditions under sections 446(e) and 481(c). See sec. 1.481–5, Income Tax Regs.

Petitioner makes several arguments in support of his position that the adjustment amount should not be triggered as income in the year of incorporation. First, he argues that he did not cease to engage in a trade or business. He also argues that to require reporting the adjustment amount at the time of the incorporation transaction would subvert the policy of section 351 which is designed to facilitate the incorporation of an on-going business.

Respondent counters by contending that petitioner ignores the change inherent in the incorporation of an unincorporated entity and that petitioners, by incorporating, ceased to engage in the acoustical and insulation business.

Initially, we must deal with those cases on which the parties focused their attention. This group of cases, *Hempt Bros., Inc. v. United States*, 490 F.2d 1172 (3d Cir. 1974), cert. denied 419 U.S. 826 (1974); *Dearborn Gage Co. v. Commissioner*, 48 T.C. 190 (1967); *Ezo Products Co. v. Commissioner*, 37 T.C. 385 (1961); *Pittsfield Coal & Oil Co. v. Commissioner*, T.C. Memo. 1966–4, holds that for purposes of section 481 the incorporation of a sole proprietorship creates a new taxpayer, the corporation. While this line of cases supports the proposition that a corporation is distinct from the proprietorship from which it was created, it does not necessarily follow that petitioners ceased to engage in the acoustical and insulation business when it was placed in corporate form.

However, it has long been held that—

A corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances * * * can the difference be disregarded. [*Burnet v. Clark*, 287 U.S. 410, 415 (1932). See also *Moline Properties v. Commissioner*, 319 U.S. 436 (1943).]

As a result, on incorporation in 1970, petitioners placed what had

been their trade or business into a separate entity whose trade or business could in no way be imputed to them.[3] Thus, on incorporation they ceased being engaged in the acoustical and insulation business as individuals[4] and as a result, under the terms of the revenue procedures, must bring into income the balance of the section 481 adjustment in the year of incorporation.[5]

*Decision will be entered for the respondent.*

---

[3]Petitioners insist "that the mere technicality of incorporation should [not] trigger an acceleration of the ten year spread." However, we cannot agree. At least one obvious tax consequence caused by incorporation is that petitioners have split income formerly reported in one return into income reported in two separate returns, one individual and one corporate. While in a given case this might not cause significant tax differences, the possibility for distortion is sufficient to call the act of incorporation more than a mere technicality. What petitioners have done here is to cause the income of the business which gave rise to the sec. 481 adjustment and the adjustment itself to be reported on different returns. One result will be to remove the income or loss of the business (now in corporate form) from petitioners' individual returns thus eliminating whatever effect that income or loss might have on the taxation of the adjustment element (still reported on petitioners' individual return) in light of the present progressive rate structure for individuals.

[4]As owners of corporate stock, petitioners became investors rather than actually being engaged in the trade or business as was the case when they were proprietors. Cf. *Whipple v. Commissioner*, 373 U.S. 193, 202 (1963), "investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation;" *Brenhouse v. Commissioner*, 37 T.C. 326 (1961); "The business of an active managing partner is that of the partnership," *Wade v. Commissioner*, T.C. Memo. 1963–50.

[5]As for petitioners' argument, that to require them to report the entire adjustment amount as income in the year of incorporation runs contra to the policy of sec. 351, we have two answers. First, the issue here posed is whether petitioners ceased to do business under sec. 481. A finding that they did so triggers recognition of the adjustment amount. It is irrelevant how that cessation occurred, i.e., death, dissolution, or change in form of doing business; and it is not relevant that the means of accomplishing that cessation might have otherwise been tax free. Also, at least in the case before us, the sec. 351 argument is not relevant for another reason. That is, because sec. 351 provides for nonrecognition treatment upon the transfer of property into corporate form with exceptions not here relevant. We are not dealing with the situation of whether sec. 351 would permit the newly formed corporation to continue reporting the adjustment amount over the remainder of the 10-year period, but rather the situation where the taxpayers continued to report the adjustment amount over the remainder of the 10-year period., ,Sec. 351 did' allow the incorporation transaction to occur tax free; it was Rev. Proc. 67–10, *supra*, as amplified by Rev. Proc. 70–16, *supra*, which required recognition of the sec. 481 adjustment on petitioners' return in the year of incorporation.

Since both parties mentioned sec. 481(b)(4)(C)(i), and because it, too, had a "ceases to engage in a trade or business" standard, we note that the Senate Committee on Finance stated with respect to that provision "this 10-year spread for net adjustments resulting in an increase in income * * * is cut off where the taxpayer's status changes." S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 967. We believe the taxpayers' status here changed upon incorporation.

Finally, we also note that respondent would apparently require immediate recognition of the sec. 481 adjustment in a case such as this where the individual taxpayers continued to report the adjustment amount and also in a case where the corporate entity attempted to report the remainder of the adjustment amount. Rev. Rul. 77–264, 1977–31 I.R.B. 9.