**KOLLSMAN INSTRUMENT CORPORATION, Petitioner–Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 407, Docket 86–4187.

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1988.

Decided March 16, 1989.

John J. Tigue, Jr., New York City (Kostelanetz Ritholz Tigue & Fink, Bryan C.

Skarlatos, of counsel), for petitioner-appellant.

Bruce R. Ellisen, Washington, D.C. (William R. Rose, Jr., Gary R. Allen, Ann Belanger Durney, of counsel), for respondent-appellee.

Before PIERCE and PRATT, Circuit Judges, and KENNETH CONBOY, District Judge for the Southern District of New York (sitting by designation).

GEORGE C. PRATT, Circuit Judge:

In 1962 * Kollsman Instrument Corporation negotiated a contract with the United States Air Force under which Kollsman agreed to make prototypes for a photo mapping system and for a ground data subsystem at a fixed contract price of $6,718,480. Because the Air Force made many changes in engineering, specifications, design, and production, that caused increased costs, Kollsman in 1965, submitted a request for equitable adjustment in the contract price pursuant to the "changes" clause in the contract. Kollsman sought a price increase in the amount of $5,528,205.

On January 10, 1966, the Air Force's contracting officer allowed a price increase, but only in the amount of $123,780. Kollsman appealed to the Armed Services Board of Contract Appeals in September 1966 and a year later, in September 1967, Kollsman and the Air Force settled on an increase of $2,000,000, instead of the $123,780. Thus, in 1967 the actual contract price that Kollsman would receive upon completion of the contract was finally determined to be $8,718,480.

In calculating its income from this contract for tax purposes for each year 1963 through 1967 Kollsman used the "cost percentage of completion" method of accounting under which it computed the percentage of the project that was completed in a given year by comparing the costs actually incurred in that year with the total projected cost of the project. Since Kollsman did not know the exact contract price that it would ultimately be entitled to receive, it estimated the gross contract price and applied each year's cost percentage of completion to that estimated gross contract price to arrive at the income from the contract that was allocated to that year. This approach was followed regardless of whether any part of the contract price was actually received in a particular year. In short, in order to arrive at the taxable income from the contract for a particular year, the costs actually expended were deducted from the allocated income reported in that year as determined by applying the cost percentage of completion to the estimated gross contract price for the entire project.

The dispute in this case arises because until 1966 Kollsman's estimate of the gross contract price it hoped to obtain was substantially higher than the fixed contract price of $6,718,480. Thus, for the years 1963 through 1965 Kollsman had reported income from the contract totaling approximately $10,142,787, and this represented only a percentage of a still higher anticipated gross contract price. In 1966, when the Air Force's contracting officer allowed a price increase of only $128,780 Kollsman realized that on its prior tax returns it had vastly overestimated the anticipated total contract price, and therefore had reported substantial excess income for 1963 through 1965. Kollsman therefore claimed a deduction of $4,359,000 on its 1966 tax return, describing it as a "Reduction of 1963–1965 claim against U.S. Air Force per 1/10/66 determination of Contracting Officer."

In 1967 after Kollsman and the Air Force settled on a $2,000,000 increase in the contract price, Kollsman again reevaluated the income it had reported in 1963 through 1965 and deducted $2,359,000 from its 1967 income, an amount the parties agree is attributable to the claimed overreporting in 1963 through 1965 when calculated on the agreed $2,000,000 increase in contract price. Kollsman's 1967 tax return described this deduction as "Claim settlement

---

* I make this exception to my general aversion to footnotes in opinions to note that the events that form the basis of this litigation began before my law clerk was born.

—U.S. Air Force" and stated in a footnote: "To a certain extent this deduction represents amounts previously deducted in 1966; upon I.R.S. audit (Years 1965–1966); however, the examining Agent disallowed the deduction, the taxpayer acceded to the deduction for the year 1966."

In 1972 the commissioner issued to Kollsman a Notice of Deficiency for the 1966 tax year, the year here in dispute, amounting to over $2,000,000 in taxes. The commissioner disallowed the claimed 1966 deduction of $4,359,000, finding that the deduction claimed and allowed for 1967 was entirely duplicative of the deduction claimed in 1966, except that the 1967 figure takes into account the $2,000,000 price increase agreed to by the Air Force in 1967. The commissioner determined that the correct year for Kollsman to deduct its loss on the contract was 1967, since that was the year in which the exact amount of the contract price was finally determined. He relied on Treasury Regulations section 1.451–1(a) which provides: "Where an amount of income is properly accrued on the basis of a reasonable estimate and the exact amount is subsequently determined, the difference, if any, shall be taken into account for the taxable year in which such determination is made."

The Notice of Deficiency also reflected the commissioner's determination that Kollsman had improperly claimed a deduction in 1966 of $868,000 for research and development expenses that should have been amortized over three years. The commissioner did, however, allow the figure to be prorated over three years, producing a deduction of $289,000 in 1966, $289,000 in 1967 and $290,000 in 1968. The result of spreading the deduction over three years was to create a net operating loss in 1968 which, when carried back to 1965, resulted in an overassessment of $137,840 in taxes for 1965. This 1965 overassessment derived ultimately from the redistribution of a disallowed 1966 deduction and was noted in the same Notice of Deficiency that informed Kollsman of its 1966 tax deficiency. Kollsman seeks to offset the 1965 overassessment against its 1966 deficiency.

## DISCUSSION

In the tax court, Kollsman claimed that it was entitled to its contract deduction in 1966, rather than in 1967, but it has abandoned that argument on appeal. We agree with the commissioner and the tax court that, under section 1.451–1(a) of the regulations, 1967 was the appropriate year for a deduction based on Kollsman's previous overestimates of income, since 1967 was the year in which the exact amount that would be paid on the contract was determined. In any event, Kollsman now claims that it should be permitted to recharacterize its claimed 1966 deduction of $4,359,000 as a "write-down" of its inventory from cost to market value.

The commissioner responds, first, that Kollsman should be precluded from arguing that the 1966 deduction may be recharacterized as an inventory write-down, because Kollsman did not raise that issue until its motion for reconsideration after the tax court's decision. Kollsman maintains that it had argued that the $4,359,000 should be allowed as a write-down of inventory, instead of as a deduction, in its opening brief to the tax court and again in its motion for reconsideration. While Kollsman's arguments may have metamorphosed in several phases during the long history of litigation surrounding this contract, Kollsman certainly did present its position to the tax court, and we see no reason to preclude Kollsman from presenting the merits of its inventory write-down argument to this court.

In essence, Kollsman now claims that in each year from 1963 through 1966 as it incurred costs on the fixed price contract, it recorded those costs into its "work-in-progress" inventory. Because Kollsman was contractually bound to sell the products to the Air Force, and because the goods were unique, the "market price" for the goods was equivalent to the contract price. Then, in 1966, when Kollsman became aware that the Air Force would only increase the contract price by $123,780, the "market price" became established at $6,842,260, or at least $4,000,000 below

Kollsman's earlier estimates. Kollsman claims that it should now be entitled to revalue its 1966 year-end inventory from this contract at that lower market value.

As support for this proposition, Kollsman cites *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) and *Space Controls v. Commissioner*, 322 F.2d 144 (5th Cir.1963). While these cases provide some support for the use of an inventory write-down under appropriate circumstances, they are of no help to Kollsman here, because an inventory write-down is inconsistent with the cost percentage of completion method of accounting used by Kollsman and, therefore, is not appropriate in these circumstances.

A central premise of Kollsman's position is that the costs incurred on this contract were recorded into its "work-in-progress" inventory. But these costs were never included in the year-end inventory for any of the tax years 1963 through 1966. Indeed, Kollsman's own witness, Mr. Burton Mazer, who was Kollsman's government accounting manager and controller of the Systems Management Division, testified that the costs for this contract, as incurred during each year, were initially, but temporarily, recorded into inventory; then the percentage of completion for the year was computed and a "sale" recorded, for an amount representing a corresponding percentage of the estimated gross income from the contract. The costs that had been temporarily recorded into inventory were thus "costed out" or deducted from the sale price accrued, to arrive at the net profit allocated to the contract for the year.

Kollsman may not now take advantage of an inventory write-down because the costs that it incurred each year from 1963 through 1966 were not claimed as part of its year-end inventory, but were instead deducted from the percentage of the estimated gross contract income accrued during each year. Thus, from the work completed on this contract in 1966, there was no "inventory" on hand for Kollsman to "write-down". We agree with the commissioner and the tax court that in this case an inventory write-down would be inconsistent with the cost percentage of completion method of accounting used by Kollsman.

■ Kollsman's final argument, that it is entitled to offset the 1965 overassessment against the 1966 deficiency is equally meritless. The tax court is a court of limited jurisdiction, and the code clearly provides that the court "in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years * * * as may be necessary correctly to redetermine the amount of such deficiency, but in so doing *shall have no jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid*". 26 U.S.C. § 6214(b) (emphasis added). Where the commissioner determines a deficiency for one year and an overpayment for another, the tax court has no jurisdiction to apply or credit the overpayment against the deficiency. *See Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 420, 64 S.Ct. 184, 185–86, 88 L.Ed. 139 (1943); *Taylor v. Commissioner*, 258 F.2d 89, 93 (2d Cir.1958).

Kollsman cites *Harris v. Commissioner*, 44 T.C.M. (CCH) 523, 539 (1982), which held that the tax court, in determining the deficiency in a particular tax year, may consider a net operating loss from a subsequent tax year, to the extent that it affects the calculation of the deficiency. But this case is inapplicable to Kollsman's argument. A net operating loss in a subsequent tax year may carry back to the tax year in question and directly affect the amount of tax owed for that tax year, thus directly affecting the amount of the deficiency. Nothing in the tax court's jurisdictional grant, however, authorizes setoffs from overpayments in other years. Indeed the statute explicitly prohibits the consideration of taxes overpaid or underpaid in other years, except as they may directly affect the calculation of any deficiency. Kollsman's remedy for the 1965 overassessment was to file an administrative claim for a refund of that overpayment when it received a notice of deficiency that included the commissioner's determination of overassessment.

## CONCLUSION

The decision and order of the tax court is affirmed.