CAPITOL FEDERAL SAVINGS & LOAN ASSOCIATION & SUBSIDIARY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20681-88.　　　Filed February 13, 1991.

*Richard L. Bacon, Gary A. Ellal,* and *David C. Simmons,* for the petitioner.
*Wilton A. Baker,* for the respondent.

WELLS, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax as follows:

| FYE | Deficiency |
|---|---|
| Sept. 30, 1978 | $712,766 |
| Sept. 30, 1984 | 67,508 |

After concessions, the issue for decision is whether respondent erred in changing petitioner's method of accounting for interest income from mortgage passthrough certificates.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner is a Federal savings and loan association with its principal place of business in Topeka, Kansas. During the years in issue, petitioner used the cash method of accounting and a fiscal year ending September 30 (taxable year) for Federal income tax purposes.

During taxable years 1978 through 1984, petitioner owned mortgage passthrough certificates (the certificates or passthrough certificates), purchased from, and issued by, the Federal National Mortgage Association (FNMA), the Government National Mortgage Association (GNMA), and the Federal Home Loan Mortgage Corp. (FHLMC). Each certificate represented an interest in a pool of residential mort-

gages originated by savings and loan associations. Each of the certificate issuers acted as a trustee in administering the collection of monthly payments on the underlying mortgages and the transmittal of such payments to the certificate holders.

The date on which the trustee under the certificates received interest payments from homeowners on the residential mortgages underlying the certificates occurred prior to the date on which the trustee actually paid that interest to petitioner. Consequently, interest payments which the trustee received during the month of September were actually paid over to petitioner during the month of October.

During taxable years 1978 through 1984, petitioner reported interest income from the certificates only when it actually received the payments from the trustee, rather than when the trustee received mortgage payments from the homeowners on the underlying mortgages. By reporting such income in October, when it actually was received, petitioner reported such interest in the new taxable year that began in October, rather than in the preceding taxable year, which ended September 30.

Late in 1984, a meeting took place between petitioner's chief financial officer and representatives of petitioner's accounting firm, which had been retained to audit petitioner's books. Petitioner's accounting firm informed petitioner's chief financial officer of a series of Revenue Rulings[1] in which respondent took the position that holders of mortgage passthrough certificates such as those owned by petitioner should take into account the interest income from such certificates at the time such income was received by the trustee, rather than when it was distributed to the certificate holders.

Petitioner's accounting firm recommended that petitioner change its method of accounting to conform to the practice outlined in the Revenue Rulings and advised petitioner to request respondent's permission to change its method of accounting for such interest income, as provided by section

---

[1]The rulings are: Rev. Rul. 84-10, 1984-1 C.B. 155, 156 (holding (7)); Rev. Rul. 71-399, 1971-2 C.B. 433, 434 (holding (6)); Rev. Rul. 70-545, 1970-2 C.B. 7, 8 (holding (5)); Rev. Rul. 70-544, 1970-2 C.B. 6, 7 (holding (6)).

446(e).[2] Based on the recommendation of its accounting firm, petitioner agreed to make the suggested change and authorized its accounting firm to prepare a Form 3115, Application for Change in Accounting Method (the application), for filing with the National Office of the Internal Revenue Service (the National Office). On January 24, 1985, petitioner's chief financial officer signed a letter requesting the change in accounting method and the related adjustment under section 481. On February 15, 1985, petitioner's accounting firm delivered the letter, together with the application, to the National Office. In the application, petitioner requested permission to change its accounting method in its 1985 taxable year and to spread the accounting adjustment required under section 481 over a 7-year period, beginning with the year of the change.

In response to one of the questions on the application, petitioner disclosed that, prior to filing the application, the Internal Revenue Service had contacted it for the purpose of scheduling an examination of its tax returns. The disclosure was made because, on January 11, 1985, one of respondent's revenue agents had informed petitioner's chief financial officer by telephone that a letter requesting information concerning tax refunds claimed by petitioner for taxable years 1982 and 1983 soon would be sent to petitioner. The information was needed for a report concerning the refunds, which exceeded $200,000, to be prepared for submission to the Joint Committee on Taxation. See sec. 6405.

Subsequently, respondent's Wichita, Kansas, District Office sent a letter dated February 7, 1985, to petitioner. The letter stated that petitioner's Federal income tax returns for taxable years 1969 through 1980, 1982, and 1983, had been selected for examination. The letter requested certain information concerning the refunds claimed by petitioner, as well as other data relating to petitioner's financial and business transactions during such years. The letter further stated that petitioner's returns would be accepted as filed if the

---

[2]Unless otherwise noted, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

requested information demonstrated that an examination of petitioner's books was not warranted.

By letter dated October 30, 1985, the National Office informed petitioner that petitioner's application would not be considered under the procedures governing accounting method changes because petitioner was "under examination" and was seeking to change an impermissible method of accounting. The letter stated that petitioner's application was being referred to the District Director, Wichita, Kansas, for appropriate action. After petitioner's accounting firm objected to such characterization of petitioner's method of accounting, the National Office subsequently sent a letter dated February 10, 1986, to petitioner. The letter stated that the October 30, 1985, letter was not to be taken as a determination as to the character of the method under review, and informed petitioner that the determination as to whether petitioner's method was impermissible would be made by the District Director examining petitioner's return.

After reviewing the application, agents of the District Director stated that petitioner's request to change its method of accounting for interest on passthrough certificates would not be considered because petitioner was using an impermissible method of accounting and was under examination when the request was made. In his report, the revenue agent who examined petitioner's return stated that such accounting method was not permitted by the Internal Revenue Code and Regulations promulgated thereunder, as explained by respondent's Revenue Rulings. The agent concluded that petitioner was not permitted to request permission to change such method under the procedures governing accounting method change requests because such procedures barred taxpayers under examination from seeking permission to change impermissible accounting methods.

Respondent subsequently issued a statutory notice of deficiency in which he determined that petitioner's method of accounting for interest received on mortgage passthrough certificates did not clearly reflect income. Respondent changed petitioner's method of accounting for such certificates beginning in the taxable year ended September 30, 1982, and took the full amount of the adjustment required under section 481(a) into account in such year.

The accounting method change increased petitioner's income in each of its taxable years 1982, 1983, and 1984. Such change caused a deficiency with respect to 1984; however, because petitioner incurred losses in 1982 and 1983, no deficiencies in income tax for such years were determined. Such increases in petitioner's income, however, reduced the amount of the loss available for application against earlier years' income, and the deficiency in taxable year 1978 is attributable to such reduction.

## OPINION

The issue presented in the instant case is whether to uphold respondent's deficiency determinations resulting from his change of petitioner's method of accounting for interest on mortgage passthrough certificates. In his notice of deficiency, respondent determined that petitioner's method of accounting for such interest did not clearly reflect petitioner's income, and respondent accordingly changed such method pursuant to his power under section 446(b).

It is well established that respondent possesses wide discretion to determine whether a particular method of accounting clearly reflects income and to require a change to a method which, in his opinion, does clearly reflect income. *Prabel v. Commissioner,* 91 T.C. 1101, 1111-1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989); *Coors v. Commissioner,* 60 T.C. 368, 394 (1973), affd. 519 F.2d 1280 (10th Cir. 1975). See also *Commissioner v. Hansen,* 360 U.S. 446, 467 (1959); *Brown v. Helvering,* 291 U.S. 193, 203-204 (1934).

Indeed, we previously have stated that respondent's determination with respect to the issue of whether income is reflected clearly is entitled to more than the usual presumption of correctness. *Reco Industries, Inc. v. Commissioner,* 83 T.C. 912, 920 (1984); *Peninsula Steel Products & Equip. v. Commissioner,* 78 T.C. 1029, 1044 (1982). Respondent's interpretation of the "clear-reflection standard [of section 446(b)] should not be interfered with unless clearly unlawful." *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532 (1979).

The taxpayer bears "a heavy burden of proof" to show that the Commissioner abused his discretion, and the Commissioner's determination "is not to be set aside unless shown to be plainly arbitrary." *Thor Power Tool Co. v. Commissioner,* 439 U.S. at 532-533. See also *Prabel v. Commissioner,* 91 T.C. at 1112 (this Court cannot interfere with the Commissioner's audit adjustments under section 446(b) unless such adjustments are "clearly unlawful" or "plainly arbitrary"); *Coors v. Commissioner,* 60 T.C. at 394-395.

Where, however, a taxpayer does demonstrate that his method of accounting clearly reflects income, the Commissioner cannot require him to change to a different method of accounting, even if such different method, in the Commissioner's view, more clearly reflects income. *Molsen v. Commissioner,* 85 T.C. 485, 498 (1985); *Peninsula Steel Products & Equip. v. Commissioner,* 78 T.C. at 1045; *Auburn Packing Co. v. Commissioner,* 60 T.C. 794, 798-799 (1973); *Garth v. Commissioner,* 56 T.C. 610, 618 (1971); *Fort Howard Paper Co. v. Commissioner,* 49 T.C. 275 (1967). Furthermore, the Commissioner may not require a taxpayer to change from one incorrect method of accounting to another incorrect method. *Prabel v. Commissioner,* 91 T.C. at 1112.

The province of this Court is not to weigh and determine the relative merits of systems of accounting. *Brown v. Helvering,* 291 U.S. at 204-205; *Auburn Packing Co. v. Commissioner,* 60 T.C. at 799. Our inquiry is limited to the question of whether the accounting method in issue satisfies the clear-reflection standard of the statute, and we do not decide whether a method is superior to other possible methods. *Auburn Packing Co. v. Commissioner,* 60 T.C. at 799-800; *Sam W. Emerson Co. v. Commissioner,* 37 T.C. 1063, 1068 (1962).[3] The question of whether a particular accounting method clearly reflects the income of a taxpayer is one of fact, and is to be determined on a case-by-case basis. *Peninsula Steel Products & Equip. v. Commissioner,* 78 T.C. at 1045; *Coors v. Commissioner,* 60 T.C. at 395.

In the instant case, respondent determined that petitioner's method of accounting for interest income from the

---

[3] *Koebig & Koebig, Inc. v. Commissioner,* T.C. Memo. 1964-32.

passthrough certificates did not produce a clear reflection of income. Respondent accordingly selected for petitioner a method that, in respondent's opinion, did produce a clear reflection of income. Petitioner concedes that its old method did not clearly reflect its income and does not dispute the correctness of the method imposed upon it by respondent. Accordingly, we find that respondent's action was within the scope of his discretion under section 446(b). *Thor Power Tool Co. v. Commissioner,* 439 U.S. at 538; *Commissioner v. Hansen,* 360 U.S. at 469.

If nothing more than respondent's exercise of discretion under section 446(b) were at issue in the instant case, our task would be at an end. Petitioner argues, however, that it should have been permitted to change its method of accounting for certificate interest during its taxable year 1985 and that it should have been allowed to spread the accounting adjustment required by section 481 over a 7-year period, as it requested in its application. Petitioner asserts that it was entitled to have its accounting method change request considered and approved under Rev. Proc. 80-51, 1980-2 C.B. 818, superseded by Rev. Proc. 84-74, 1984-2 C.B. 736. Petitioner contends that respondent erred by making the change sought by petitioner in taxable year 1982 and requiring petitioner to take the entire adjustment required by section 481(a) into account in such year.

Petitioner has suggested a variety of potential forms of relief to the Court, including: (1) Remanding the accounting method change request to respondent for consideration on its merits, (2) finding that respondent should have consented to the accounting method change request filed by petitioner in 1985 and finding further that petitioner is entitled to a 7-year adjustment period beginning in that year, or (3) finding that no deficiencies existed in the years in issue because the accounting method change and related adjustments which caused them should have been made in years other than the year selected by respondent.

We do not, however, have jurisdiction to grant petitioner much of the relief it seeks. A request for permission to change a method of accounting is a request for a ruling from the Commissioner.[4] Sec. 601.204(c), Statement of

---

[4]*Cochran Hatchery, Inc. v. Commissioner,* T.C. Memo. 1979-390.

Procedural Rules. The issuance of a ruling is a matter within the discretion of the Commissioner, and a ruling is issued only when he deems it to be in the interest of sound tax administration. Sec. 601.201(d), Statement of Procedural Rules. It is well settled that a court may not order an agency to perform a discretionary act. See *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 543 (1937); *Short v. Murphy*, 512 F.2d 374, 377 (6th Cir. 1975). See also *Perlmutter v. Commissioner*, 44 T.C. 382, 398 (1965), affd. 373 F.2d 45 (10th Cir. 1967) (the province of the Tax Court is not to interfere with the Commissioner's internal policies and procedure). We therefore cannot order respondent to consider petitioner's request, or order respondent to allow the change.

Petitioner also has asked us to order the adjustment required under section 481 to be taken into account over a 7-year period beginning in 1985. Section 481(c), however, expressly provides that a spread of the adjustment over more than 1 year is allowed only as permitted under regulations. Regulations promulgated under section 481(c) provide that such adjustment may be taken into account under terms and conditions agreed to by the Commissioner and the taxpayer. Sec. 1.481-5, Income Tax Regs. Petitioner, therefore, is asking us to usurp a function which has been assigned to respondent, a remedy clearly outside of our jurisdiction.

Furthermore, under section 6214(b), we do not have jurisdiction to decide tax liability with respect to years not placed at issue by the notice of deficiency and framed in the pleadings. *Kollsman Instrument Corp. v. Commissioner*, 870 F.2d 89, 92 (2d Cir. 1989), affg. a Memorandum Opinion of this Court; *Edgewater Steel Co. v. Commissioner*, 23 T.C. 613, 629 (1955); *F.A. Gillespie Trust v. Commissioner*, 21 T.C. 739, 742 (1954). Such an order would require us to make findings with respect to petitioner's tax liability for taxable years in the spread period that are not covered by the notice of deficiency, which are clearly beyond our jurisdiction.

Consequently, our only jurisdiction in the instant case is to decide whether the deficiencies determined by respondent are erroneous. In consideration of that issue, petitioner

engages the provisions of section 446(e), which requires taxpayers to obtain the consent of the Commissioner before changing their accounting methods. In deciding whether to give his consent, the Commissioner is invested with wide discretion. *Brown v. Helvering,* 291 U.S. 193, 204 (1934); *Barber v. Commissioner,* 64 T.C. 314, 319 (1975). The Commissioner's determinations under section 446(e), however, are reviewable for abuse of such discretion. *Casey v. Commissioner,* 38 T.C. 357, 386-387 (1962); *Advertisers Exchange, Inc. v. Commissioner,* 25 T.C. 1086, 1093 (1956), affd. per curiam 240 F.2d 958 (2d Cir. 1957); *SoRelle v. Commissioner,* 22 T.C. 459, 469 (1954); *National Airlines, Inc. v. Commissioner,* 9 T.C. 159 (1947).

Whether the Commissioner has abused his discretion is a question of fact. *Buzzetta Construction Corp. v. Commissioner,* 92 T.C. 641, 649 (1989); *Estate of Gardner v. Commissioner,* 82 T.C. 989, 1000 (1984). In reviewing the Commissioner's actions, however, we do not substitute our judgment for the Commissioner's, nor do we permit taxpayers to carry their burden of proof by a mere preponderance of the evidence. *Buzzetta Construction Corp. v. Commissioner,* 92 T.C. at 648; *Mailman v. Commissioner,* 91 T.C. 1079, 1084 (1988); *Pulver Roofing Co. v. Commissioner,* 70 T.C. 1001, 1011 (1978). Taxpayers are required to clearly show that the Commissioner's action was arbitrary, capricious, or without sound basis in fact. *Knight-Ridder Newspapers v. United States,* 743 F.2d 781, 788 (11th Cir. 1984); *Mailman v. Commissioner,* 91 T.C. at 1084; *Drazen v. Commissioner,* 34 T.C. 1070, 1076 (1960).

In the instant case, however, the path to finding that respondent has abused his discretion contains several obstacles, and petitioner has not pointed a way around all of them. First, respondent argues that, if we consider petitioner's allegations with respect to the accounting change request, we would be required to "look behind" the notice of deficiency and examine respondent's motives and administrative policy or procedures in order to make a finding that respondent's action was arbitrary, capricious, or without sound basis in fact.

Generally, we refuse to examine the Commissioner's conduct in arriving at his determinations,[5] or to find a notice of deficiency to be invalid on such basis. *Vallone v. Commissioner,* 88 T.C. 794, 806 (1987); *Riland v. Commissioner,* 79 T.C. 185, 200-202 (1982); *Estate of Brimm v. Commissioner,* 70 T.C. 15, 22 (1978); *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327-328 (1974). That is the case even where the record discloses procedural irregularities. *Rosenberg v. Commissioner,* 450 F.2d 529 (10th Cir. 1971), affg. a Memorandum Opinion of this Court; *Church of Scientology of California v. Commissioner,* 83 T.C. 381, 447 (1984), affd. 823 F.2d 1310 (9th Cir. 1987). We also have held that considering a taxpayer's claim that the Commissioner violated rules governing internal procedures for determining deficiencies constitutes an impermissible inquiry into respondent's administrative policies and procedures. *Flynn v. Commissioner,* 40 T.C. 770, 773 (1963).

Consideration of petitioner's claim in the instant case, however, does not require an examination of the method or procedure used to arrive at the determination in the notice of deficiency. Rather, it involves a review of respondent's refusal to consent to petitioner's accounting change request. Such refusal is a type of administrative decision which is well within our scope of review. See, e.g., *Casey v. Commissioner,* 38 T.C. at 386-387. See also *Mailman v. Commissioner,* 91 T.C. at 1083 (Tax Court has power to review actions of the Commissioner for abuse of discretion).

Furthermore, we have held that a review of an exercise of discretion which is necessary to determine the merits of the Commissioner's substantive determination of deficiency does not constitute "looking behind" the notice of deficiency. *Estate of Gardner v. Commissioner,* 82 T.C. 989, 1000 (1984). We have recognized that a somewhat broader scope of inquiry is permitted where taxpayers have the heavy burden of demonstrating that the Commissioner has abused his discretion. *Branerton Corp. v. Commissioner,* 64 T.C. 191, 200-201 (1975) (taxpayer permitted to inquire into Commissioner's method of calculating bad debt deduction in order to show abuse of discretion). Accordingly, consider-

---

[5]We make an exception to such rule where there is substantial evidence of constitutional violations by the Commissioner. *Frazier v. Commissioner,* 91 T.C. 1, 9 (1988).

ation of respondent's denial of petitioner's application does not violate the venerable rule against "looking behind" the notice of deficiency.

Moreover, petitioner does not seek to have the notice of deficiency declared invalid on the basis of respondent's action; rather, its aim is to show error in the notice by proving that the accounting method change and related adjustments which caused the deficiencies in the instant case should have been made in years other than the ones in issue. Petitioner contends that respondent's determination with respect to petitioner's application is relevant to our redetermination of the deficiencies for that reason. See *Estate of Gardner v. Commissioner*, 82 T.C. at 1000. Petitioner wishes to show that the increases in its income which caused the deficiencies properly were includable in taxable years after 1984 because of its accounting method change request.

Consideration of petitioner's claim is not precluded by section 6214(b). Although such provision limits our power to redetermine tax liabilities to the years placed in issue by the notice of deficiency, it permits us to consider facts occurring outside such years in order to find the correct tax for the years in issue. *Gulf Oil Corp. v. Commissioner*, 86 T.C. 115, 136 (1986), affd. in part and revd. in part on other issues, and remanded 914 F.2d 396, 413 (3d Cir. 1990); *Martz v. Commissioner*, 77 T.C. 749, 753-754 (1981); *Greenleaf Textile Corp. v. Commissioner*, 26 B.T.A. 737, 741 (1932), affd. per curiam 65 F.2d 1017 (2d Cir. 1933). Consequently, even though the actions of which petitioner complains occurred outside the taxable years in issue, we may consider them insofar as they bear on the correctness of the deficiencies determined for the years in issue. *Hill v. Commissioner*, 95 T.C. 437 (1990); *Lone Manor Farms, Inc. v. Commissioner*, 61 T.C. 436, 440-441 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975). Accordingly, we will consider petitioner's argument.

Petitioner argues that the terms of Rev. Proc. 80-51, 1980-2 C.B. 818, superseded by Rev. Proc. 84-74, 1984-2 C.B. 736,[6] permitted its request to be considered and

---

[6]Rev. Proc. 84-74 superseded Rev. Proc. 80-51 for Forms 3115 filed for tax years beginning on or after Oct. 29, 1984. Sec. 11.01, Rev. Proc. 84-74, 1984-2 C.B. 736, 751. The tax year for

approved by respondent, but that respondent refused to process it in accordance with such procedure. Petitioner contends that once it has shown that its application satisfied the threshold eligibility requirements of the revenue procedure, the burden of showing whether its application would have been approved on its merits should "shift to respondent."

Petitioner's argument, however, ignores Rule 142(a), which places the burden of proof generally on petitioners. None of the exceptions to Rule 142(a), such as the raising of a new matter by the Commissioner, apply in the instant case. Rather, inasmuch as the instant case calls for review of action taken by respondent pursuant to his authority under section 446(e), we find that the appropriate standard for review in the instant case is abuse of discretion. *Casey v. Commissioner,* 38 T.C. 357, 386-387 (1962); *Advertisers Exchange, Inc. v. Commissioner,* 25 T.C. 1086, 1093 (1956), affd. per curiam 240 F.2d 958 (2d Cir. 1957); *SoRelle v. Commissioner,* 22 T.C. 459, 469 (1954); *National Airlines, Inc. v. Commissioner,* 9 T.C. 159 (1947).

We note at the outset that a substantial body of law exists regarding the judicial review of agency discretion. Agencies are not required, at the risk of invalidation of their actions, to follow all of their rules. *United States v. Caceres,* 440 U.S. 741, 754 n.18 (1979). Generally, agencies are bound by regulations having the force and effect of law. *Chrysler Corp. v. Brown,* 441 U.S. 281, 295 (1979); *Vitarelli v. Seaton,* 359 U.S. 535 (1959); *Service v. Dulles,* 354 U.S. 363 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); *Boulez v. Commissioner,* 810 F.2d 209, 215 (D.C. Cir. 1987), affg. 76 T.C. 209 (1981).

It is well established, however, that general statements of policy and rules governing internal agency operations or "housekeeping" matters, which do not have the force and effect of law, are not binding on the agency issuing them and do not create substantive rights in the public. *Sullivan v. United States,* 348 U.S. 170 (1954) (Attorney General's Circular Letter on seeking criminal indictments under income tax laws); *United States v. Will,* 671 F.2d 963, 967

---

which petitioner requested permission to change its method of accounting began on Oct. 1, 1984, and so its application was governed by Rev. Proc. 80-51.

(6th Cir. 1982) (Internal Revenue Manual); *Einhorn v. DeWitt,* 618 F.2d 347, 349-350 (5th Cir. 1980) (Statement of Procedural Rules); *United States v. Thompson,* 579 F.2d 1184 (10th Cir. 1978) (Attorney General's prosecutorial guidelines); *United States v. Fritz,* 580 F.2d 370 (10th Cir. 1978) (Attorney General's prosecutorial guidelines); *Smith v. Commissioner,* 478 F.2d 398 (5th Cir. 1973) (Statement of Procedural Rules); *Rosenberg v. Commissioner,* 450 F.2d 529, 531 (10th Cir. 1971), affg. a Memorandum Opinion of this Court (Statement of Procedural Rules); *United States v. Lockyer,* 448 F.2d 417 (10th Cir. 1971) (Internal Revenue Manual); *Luhring v. Glotzbach,* 304 F.2d 560 (4th Cir. 1962) (Statement of Procedural Rules); *Cataldo v. Commissioner,* 60 T.C. 522, 523 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974) (Statement of Procedural Rules); *Flynn v. Commissioner,* 40 T.C. 770, 773 (1963) (Statement of Procedural Rules).

Revenue procedures generally have been held to fall into such latter class of nonbinding rules, and courts have refused to invalidate the Commissioner's determinations arising out of his failure to abide by them. *Cleveland Trust Co. v. United States,* 421 F.2d 475, 481-482 (6th Cir. 1970); *Geurkink v. United States,* 354 F.2d 629, 632 (7th Cir. 1965); *Schwager v. Commissioner,* 64 T.C. 781, 787 (1975); *Collins v. Commissioner,* 61 T.C. 693, 701 (1974); *Crocker v. United States,* 323 F. Supp. 718, 722-723 (N.D. Miss. 1971). See also sec. 601.601(d)(2)(i)(b), Statement of Procedural Rules; Rev. Proc. 89-14, 1989-1 C.B. 814 (definition of a revenue procedure).

We have recognized, however, that an abuse of discretion can occur where the Commissioner fails to observe self-imposed limits upon the exercise of his discretion, provided he has invited reliance upon such limitations. *Elkins v. Commissioner,* 81 T.C. 669, 677 (1983); *Presbyterian & Reformed Publishing Co. v. Commissioner,* 79 T.C. 1070, 1089 (1982), revd. on other grounds 743 F.2d 148 (3d Cir. 1984); *Lansons, Inc. v. Commissioner,* 69 T.C. 773, 786-787 (1978), affd. 622 F.2d 774 (5th Cir. 1980). See also *Beneficial Foundation, Inc. v. United States,* 8 Cl. Ct. 639 (1985) (Commissioner's exercise of discretion reviewed for compli-

ance with provisions of revenue procedure stating the manner in which such discretion would be employed).

In *Lansons, Inc. v. Commissioner, supra,* we held that the Commissioner could not exercise his power under section 7805(b) to retroactively revoke a ruling because his action amounted to an abuse of discretion. Our holding was based on the fact that none of the circumstances set forth in the statement of procedural rules and a revenue procedure, and identified by the Commissioner as warranting such action, were found to exist. *Lansons, Inc. v. Commissioner, supra* at 787. We held that the Commissioner must observe his published standards on the basis of his longstanding practice of assuring taxpayers that they may rely on rulings issued to them, absent a change in facts. *Lansons, Inc. v. Commissioner, supra* at 786. The reason the Commissioner publishes a statement of the circumstances under which a ruling will be retroactively revoked "is to provide some certainty for taxpayers and to permit them to rely upon respondent's rulings. Without such assurance there would be little reason to obtain a ruling." *Pulver Roofing Co. v. Commissioner,* 70 T.C. 1001, 1018, 1022 (1978) (Drennen, J., dissenting).

In *Presbyterian & Reformed Publishing Co. v. Commissioner, supra,* we held the retroactive revocation of an exemption letter to be an abuse of discretion where conditions for such action spelled out in a revenue procedure were not met. *Presbyterian & Reformed Publishing Co. v. Commissioner, supra* at 1089. We reasoned that where the Commissioner "has chosen, in the exercise of his wide discretion, to impose discretionary limits, he must abide by those limits." *Presbyterian & Reformed Publishing Co. v. Commissioner, supra* at 1089.

In *Elkins v. Commissioner, supra,* the Commissioner announced that a proposed amendment to a regulation would not be applied under certain specified circumstances. When the regulations subsequently were promulgated, the Commissioner retroactively attempted to change the interpretation set forth in the prior announcement. We held that the Commissioner abused his discretion under section 7805(b), at least with respect to taxpayers who reasonably relied upon the announcement. *Elkins v. Commissioner,* 81

T.C. at 677, 679-681. We stated that the Commissioner's discretion to "apply his regulations retroactively is very broad, but its counterpart is the responsibility to provide taxpayers with adequate guidance as to the extent to which his power will be exercised, or at the very least to avoid misleading them." *Elkins v. Commissioner,* 81 T.C. at 681.

We find that the same considerations which guided our reasoning in *Elkins, Presbyterian,* and *Lansons* are present in the instant case. Respondent published Rev. Proc. 80-51, *supra,* as a guide to the exercise of his broad discretionary powers to consent to accounting method changes under section 446(e) and to permit spreading the adjustments required under section 481(a) over more than 1 taxable year. See sec. 1.446-1(e)(3)(ii), Income Tax Regs.; sec. 1.481-5, Income Tax Regs. The stated aim of the revenue procedure is to "encourage compliance with proper methods of accounting when a taxpayer is determining taxable income in accordance with one or more methods of accounting that are proscribed by the Code, regulations, decisions of the Supreme Court of the United States, *revenue rulings,* and revenue procedures." Sec. 3.01, Rev. Proc. 80-51, 1980-2 C.B. 818, 819, superseded by Rev. Proc. 84-74, 1984-2 C.B. 736 (emphasis added). Rev. Proc. 80-51 states that a "taxpayer wishing to *invoke* the provisions of this revenue procedure should complete and file a current Form 3115." Sec. 7.01, Rev. Proc. 80-51, 1980-2 C.B. at 826 (emphasis added).

Accordingly, we find that the Commissioner promulgated Rev. Proc. 80-51 with the intention that taxpayers would rely upon its terms. We therefore hold that a refusal to process an application for accounting method change in accordance with the terms of Rev. Proc. 80-51 is reviewable by this Court to ascertain whether respondent has abused his discretion. We emphasize, however, that the rule applied in the instant case affects only pronouncements regarding the exercise of discretion where the Commissioner invites reliance or where reliance is reasonable under the circumstances. Statements concerning the exercise of discretion which are issued solely for the guidance of the Commissioner's agents and employees, and which are not intended to be relied upon by the public in conducting its affairs, have not

been and continue not to be binding on the Commissioner.[7] See, e.g., *United States v. Will,* 671 F.2d at 967; *Luhring v. Glotzbach,* 304 F.2d 560, 563 (4th Cir. 1962); *Collins v. Commissioner,* 61 T.C. at 701; *Flynn v. Commissioner,* 40 T.C. at 773. See also *Sullivan v. United States,* 348 U.S. 170 (1954); *United States v. Thompson,* 579 F.2d 1184 (10th Cir. 1978); *United States v. Fritz,* 580 F.2d 370 (10th Cir. 1978) (Attorney General's guidelines on exercise of prosecutorial discretion).

Furthermore, unaffected by our holding is the ability of the Commissioner to make retroactive revocations of rulings premised upon an erroneous view of the law. *Dixon v. United States,* 381 U.S. 68 (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183-184 (1957); *Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134 (1936); *Caterpillar Tractor Co. v. United States,* 218 Ct. Cl. 517, 589 F.2d 1040, 1043 (1978); *Carpenter v. United States,* 495 F.2d 175 (5th Cir. 1974); *Golden Nugget, Inc. v. Commissioner,* 83 T.C. 28, 43-44 (1984).

The application of the rule set forth herein will not have an adverse effect upon the ability of the Commissioner to provide for adequate protection of his interests. We recognize that the Commissioner has a legitimate interest in limiting the ability of taxpayers under examination to change improper accounting methods where such restriction is necessary to prevent circumvention or frustration of the examination process. Indeed, blocking such attempts was one of the principal purposes of Rev. Proc. 80-51. See sec. 3.02, Rev. Proc. 80-51, 1980-2 C.B. at 819.

The Commissioner, however, retains the power to revise his revenue procedures in order to better secure his interests. For instance, in Rev. Proc. 84-74, the successor revenue procedure to Rev. Proc. 80-51, the Commissioner expanded the class of accounting methods which a taxpayer under examination is not allowed to apply to the National Office for permission to change to include methods respondent deems to be "clearly erroneous." Sec. 6.02, Rev. Proc. 84-74, 1984-2 C.B. 736, 747.

---

[7]See *Gmelin v. Commissioner,* T.C. Memo. 1988-338, affd. 891 F.2d 280 (3d Cir. 1989); *Guilford v. Commissioner,* T.C. Memo. 1987-535.

Having laid the foundation for our review, we will now consider whether respondent abused his discretion in refusing to process petitioner's accounting method change request. Under Rev. Proc. 80-51, two principal criteria are used to determine whether a taxpayer's Form 3115 can be considered by the National Office. The first criterion is whether the taxpayer is under examination at the time the request is filed, and the second is the character of the accounting method sought to be changed. Sec. 4.01, Rev. Proc. 80-51, 1980-2 C.B. at 820. Where a taxpayer has been contacted in any manner by the Service for the purpose of scheduling an examination of its tax returns, the taxpayer may not apply under the revenue procedure for permission to change a method which is specifically prohibited by the Internal Revenue Code, Treasury regulations, or a Supreme Court decision (a category A method). Secs. 4.01, 6.02, Rev. Proc. 80-51, 1980-2 C.B. at 820, 825. The revenue procedure permits a taxpayer under examination to apply for permission to change any other type of method (a category B method) under certain circumstances. Secs. 4.01, 6.03, Rev. Proc. 80-51, 1980-2 C.B. at 820, 825-826. The revenue procedure also limits the ability of taxpayers under examination to apply for accounting method changes in other situations. Sec. 4.01, Rev. Proc. 80-51, 1980-2 C.B. at 820.

Petitioner contends that it satisfied the threshold requirements of Rev. Proc. 80-51, and therefore was entitled to have its application considered by respondent. Petitioner asserts that it had not been contacted by respondent for the purpose of scheduling an examination when it filed the application. We find, however, that it was not unreasonable for respondent to have concluded that petitioner had been contacted before the application was filed. Prior to the filing of the application, one of respondent's agents already had alerted petitioner that information for a report concerning refunds claimed by petitioner was to be solicited, and respondent already had sent petitioner a letter stating that an examination of petitioner's returns for certain designated years was to be undertaken. Furthermore, on its application, petitioner acknowledged that it had been contacted. Under the circumstances, we find that respondent did not abuse his discretion either when he concluded that peti-

tioner had been contacted or when he handled the application in accordance with the procedures under the revenue procedure applicable in cases where a taxpayer is under examination.

Petitioner further contends that, even if it was under examination, the accounting method it sought to change was a category B method, and that it was entitled to have its application considered under the provisions of the revenue procedure. To resolve the classification issue, we will consider respondent's own understanding of the distinction between category A and category B accounting methods, as revealed by both the revenue procedure and rulings construing it. While respondent's rulings do not constitute authority for a litigating position before this Court, *Stark v. Commissioner*, 86 T.C. 243, 250-251 (1986), they are relevant to deciding whether respondent abused his discretion by failing to observe self-imposed limitations on the exercise of such discretion. *Presbyterian & Reformed Publishing Co. v. Commissioner*, 79 T.C. 1070, 1089 (1982), revd. on other grounds, 743 F.2d 148 (3d Cir. 1984); *Lansons, Inc. v. Commissioner*, 69 T.C. 773, 786-787 (1978), affd. 622 F.2d 774 (5th Cir. 1980).

Generally, the Commissioner does not consider a method of accounting to be in category A unless the Internal Revenue Code, Treasury regulations, or a Supreme Court decision specifically states that a particular method is improper. See Rev. Proc. 90-36, 1990-27 I.R.B. 14 (accounting method disapproved by Supreme Court in *Colonial American Life Insurance Co. v. Commissioner*, 491 U.S. 244 (1989)); sec. 6.02, Rev. Proc. 84-74, 1984-2 C.B. at 747-748 (listing of category A methods); Rev. Rul. 84-32, 1984-1 C.B. 129.

Methods which involve the erroneous application of the general principles of a method of accounting, but which are not specifically identified as impermissible by the Internal Revenue Code, Treasury regulations, or decisions of the Supreme Court, generally are classified as category B methods. See Rev. Rul. 84-41, 1984-1 C.B. 130; Rev. Rul. 83-106, 1983-2 C.B. 77; Rev. Rul. 81-173, 1981-1 C.B. 314.[8]

---

[8]The Commissioner has issued a number of private rulings which also adopt such understanding of what constitutes a "category B" method. Letter Ruling 8738004 (June 5,

Commentators in the field of accounting also have noted such distinction between the two categories. One treatise states:

In summary, a Category A method includes only those methods which are clearly erroneous because they are *specifically* precluded from being used. An erroneous interpretation of a Code provision or regulation is not a Category A method. Normally, an erroneous method is a Category A method only if it is *specifically not permitted* by the Code, regulations, or a Supreme Court decision. [G. Bauernfeind, Income Taxation, Accounting Method and Periods, sec. 32.07, p. 1S-74 (Supp. 1989). Emphasis in original.]

Petitioner's former method of accounting for interest on its passthrough certificates was not specifically prohibited by the Internal Revenue Code, Treasury regulations, or a Supreme Court decision. The most that can be said is that petitioner's former method involved an incorrect application of the general principles of the cash method of accounting, which does not make petitioner's former method a category A method. We therefore find that petitioner's former method of accounting for interest on its passthrough certificates was a category B method. Consequently, we find that respondent erred in his classification of the method in issue in the instant case.

A mere showing of error, however, is by itself insufficient to carry petitioner's burden of showing abuse of discretion. Petitioner still must show clearly that respondent's refusal to consider its accounting change request was arbitrary, capricious, and without basis in fact. *Mailman v. Commissioner,* 91 T.C. at 1084. In the instant case, however, we do not find that respondent's refusal to process petitioner's accounting method change request was clearly arbitrary.

Rev. Proc. 80-51 provides that the National Office may decline to process a request to change an accounting method where the years under examination encompass the taxable year in which the erroneous method was initiated by the taxpayer. Sec. 4.01(1), Rev. Proc. 80-51, 1980-2 C.B.

1987); Letter Ruling 8736002 (Apr. 30, 1987); Letter Ruling 8651003 (Aug. 9, 1986); Letter Ruling 8526001 (Feb. 21, 1985) ("Absent specific language prohibiting the use of Taxpayer's present method, we cannot rule that such a method * * * is a Category A method"). While such rulings may not be used or cited as precedent, sec. 6110(j)(3), they provide insight into the Commissioner's understanding of the difference between the two classes of accounting methods. *Silco, Inc. v. United States,* 779 F.2d 282, 287 (5th Cir. 1986); *TeleCommunications, Inc. v. Commissioner,* 95 T.C. 495 (1990).

at 820. The accounting method in issue in the instant case, which petitioner concedes was erroneous, was initiated in petitioner's taxable year 1978, the taxable year that petitioner first purchased mortgage passthrough certificates.

Taxable year 1978 was included in the list of taxable years identified as having been selected for examination in the February 7, 1985, letter sent by respondent to petitioner. Although an agent actually had not begun to go over petitioner's books and records at the time the application was filed, we think respondent reasonably could have determined that petitioner was under examination by virtue of the contacts between petitioner and respondent's agents prior to the filing. Consequently, respondent properly could have declined to process the request under section 4.01 of Rev. Proc. 80-51.

Even if an application is otherwise eligible for consideration, Rev. Proc. 80-51 makes clear that a taxpayer is not automatically entitled to receive consent to change a method of accounting, or even to have a request for change considered. Rev. Proc. 80-51 provides that:

The Service reserves the right to decline to process an application for change in accounting method filed under this revenue procedure in situations in which it would not be in the best interest of sound tax administration to permit the requested change. In this regard the Service will consider whether such change in method of accounting would clearly and directly frustrate compliance efforts of the Service in administering the income tax laws. [Sec. 4.06, Rev. Proc. 80-51, 1980-2 C.B. at 821.]

As we stated above, respondent has a legitimate interest in ensuring that, where a taxpayer is under examination, the District Director's efforts are not compromised or defeated by the action of another department within the Internal Revenue Service. Such a compromise could occur if the National Office were to consider an accounting method issue which might otherwise be the subject of the District Director's examination and determination. Indeed, Rev. Proc. 80-51's predecessor, Rev. Proc. 70-27, 1970-2 C.B. 509, permitted such a compromise to occur, and one of the purposes of Rev. Proc. 80-51 was to prevent just such a compromise.

Consequently, respondent did not abuse his discretion in declining to process petitioner's application at the National

Office. Petitioner had been contacted for examination when the accounting method change request was submitted, and petitioner admitted such fact in its filing. The accounting method sought to be changed was one of which respondent had disapproved in his published rulings, and the District Director ordered such method changed in the course of the examination. Respondent reasonably could have found that considering petitioner's application under such circumstances could have frustrated respondent's efforts to encourage compliance with the internal revenue laws. Furthermore, petitioner's accounting method was reviewed in the course of the audit, and the application was rendered moot by the change in method made by the District Director in petitioner's 1982 taxable year. Accordingly, we do not find that respondent's refusal to process the accounting method change request was arbitrary, capricious, or without sound basis in fact.

Petitioner also argues that it should have been allowed to take the adjustment required under section 481(a) into income over a period of more than 1 year. Section 481(c), however, expressly provides that spreading the adjustment over more than 1 year is permitted only in the manner prescribed by regulations. Regulations issued pursuant to section 481(c) provide that the Commissioner and the taxpayer must make an agreement as to the terms and conditions under which the allocation is to be effected. Sec. 1.481-5, Income Tax Regs.

Both the statute and regulations thereunder make clear that a taxpayer is not entitled to extend the adjustment period beyond the year of change unless the taxpayer has obtained the Commissioner's agreement or approval.[9] *Southern Pacific Transportation Co. v. Commissioner*, 82 T.C. 122, 125 (1984). See also *Shore v. Commissioner*, 69 T.C. 689, 692 (1978), affd. 631 F.2d 624 (9th Cir. 1980) (Commissioner has the power to prescribe conditions under which spreading the section 481(a) adjustment is to be allowed). While respondent's denial of permission to allocate a section 481(a) adjustment to more than 1 tax year is reviewable for abuse of discretion, see *Mailman v. Commissioner*, 91 T.C. 1079, 1083-1084 (1988); *Lansons, Inc. v. Commissioner*, 69 T.C.

---

[9]*Gustafson v. Commissioner*, T.C. Memo. 1988-82.

773, 786-787 (1978), affd. 622 F.2d 774 (5th Cir. 1980), we do not find that respondent has abused his discretion in the instant case.

To reflect the foregoing,

*Decision will be entered for the respondent.*