T.C. Memo. 1997-318


UNITED STATES TAX COURT


LEONARD CHARLES AND KAYE LAYNE EKMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1920-95.                    Filed July 9, 1997.


<u>Paul Croushore</u>, for petitioners.

<u>James W. Ruger</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency of $2,925 in petitioners'
Federal income tax for 1991.  The issues for decision are:

---

[1]     Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

(1) Whether petitioners are entitled, under section 174(a), to a deduction for the cost of an automobile engine that was used in connection with a research or experimentation activity of Leonard Charles Ekman (petitioner); (2) if the automobile engine is not deductible as a research or experimentation expense, whether the cost is deductible under section 179; and (3) if the cost of the automobile engine is not deductible under either section 174(a) or section 179, whether the engine is depreciable under section 167.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners, husband and wife, were legal residents of Panama City, Florida.

Although the issues in this case involve one item, an automobile engine that was used in a research and experimental activity, there are several other adjustments in the notice of deficiency as to which the parties reached a basis for settlement prior to trial.[2]

_____

[2] On their income tax return, petitioners claimed Schedule A itemized deductions of $11,819. In the notice of deficiency, respondent disallowed these expenses as itemized deductions but allowed Schedule E expenses on rental property of $12,725 and $1,790 for depreciation. Petitioners agree to these adjustments. On Schedule C of their income tax return, relating to petitioners' research or experimental activity, petitioners claimed expenses totaling $18,305 that respondent totally disallowed. Respondent, however, allowed a deduction, under Schedule C, in the amount of $609, for expenses petitioners had

(continued...)

Petitioner is a graduate of the U.S. Air Force Academy and retired after a career in the Air Force. He possesses dual degrees from the Air Force Academy in aeronautical engineering and political science. He also has advanced degrees from other institutions of higher learning. While petitioner was on active duty in the Air Force, he developed an interest in the Porsche automobile, which is manufactured in Germany. Although Porsche produced several types of engines, petitioner was particularly interested in the Porsche 928 S4 engine. From the evidence adduced at trial, it appears that this engine was designed to run comfortably at speeds of 130 to 150 miles per hour; however, the engine was not designed for racing. Petitioner became interested in developing modifications to the engine that would increase the engine's horsepower so that the car would be adaptable for racing and still could be used as a regular street vehicle. Petitioner felt that there was a niche in the market for this type of vehicle, although the manufacturer, Porsche, was not interested in producing such an engine for the reason that Porsche offered other types of engines for racing purposes. The Porsche 928 S4

---

[2](...continued)
not claimed on their return. In the written stipulation filed at trial, with respect to the $18,305 disallowed expenses, respondent conceded that petitioners were entitled to a deduction for $11,305 of these expenses, leaving at issue $7,000, representing the cost of the automobile engine referred to in the statement of issues.

engine is a V-8 engine, while the other engines Porsche produces are V-6 engines.

The engine enhancements petitioner envisioned for the 928 S4 engine were modifications to the cam, camshaft, pistons, and cylinders, as well as modifications to the car's braking system, and other components to complement the modifications. Without any modifications, the Porsche 928 S4 engine generated approximately 66 horsepower per liter, whereas petitioner's objective was to increase the engine's horsepower to a range of 100 to 118 horsepower per liter, for a total horsepower in excess of 500 for a 5-liter engine.

Petitioner began working on his concept around 1984, initially on a Porsche 928 S4 two-valve engine. In late 1990, petitioner decided to intensify his efforts to develop the engine modifications. After consultations with other mechanics who were familiar with the Porsche engine, it was suggested to petitioner that his concept would be more suitable for a four-valve Porsche engine rather than the two-valve engine.

In March 1991, petitioner purchased a damaged Porsche 928 S4, four-valve engine, on which he would make the modifications to enhance the engine. Later, in 1991, petitioner enlisted other individuals to participate in the venture. Under the agreement with his partners, the enhancement of the engine remained an activity of petitioner, and his partners were to develop and

produce the other parts and components that would complement the enhanced engine. The damaged engine petitioner purchased cost $7,000. Petitioner made the necessary repairs to the engine and then made the necessary modifications to enhance the engine. There is no dispute that petitioner reached his objective of increasing the engine's horsepower. In arriving at that goal, several other modifications were necessary along the way that petitioner apparently had not anticipated. For example, with the enhanced engine running at higher revolutions per minute, petitioner had to make modifications to the engine's oil system. These modifications were also successful. In addition, petitioner purchased two used Porsche automobiles. They provided the parts and the body into which the $7,000 engine was placed after the engine enhancements had been completed.

The $7,000 engine that petitioner modified was not intended to be sold but, rather, was intended to be used for purposes of making the modifications to see if such modifications would work. The enhanced engine was not designed for, nor was it intended to be, a finished product but, rather, was used solely for purposes of making the modifications that, if successful, would be implemented on other 928 S4 Porsche engines and marketed.

Respondent agrees that petitioner was engaged, during 1991, in an activity that qualified as research or experimentation under section 174(a). Respondent, after issuance of the notice

of deficiency, conceded petitioners' entitlement to a deduction of various expenses for research or experimentation on the subject engine: $3,050 for cam development, $2,120 for piston development, $4,135 for engine block development, and $2,000 for cylinder head development, totaling $11,305. Respondent maintains that the $7,000 paid by petitioner for the damaged Porsche 928 S4 engine does not constitute a research or experimentation expense on the ground that the engine constituted the acquisition of another's patent, model, production, or process under section 1.174-2(a)(1), Income Tax Regs., and, therefore, the cost of the engine is not deductible. Respondent further contends that the engine was an asset used in connection with research or experimentation under section 1.174-2(b)(1), (2), and (4), Income Tax Regs., and, therefore, could not be expensed but could only be depreciated. However, respondent further contends that no depreciation should be allowed because the engine was not placed in service during 1991.

Petitioners contend that the $7,000 cost of the engine constitutes a research or experimentation expense that is fully deductible in 1991 under section 174(a) or, alternatively, under section 179, or, as a final alternative, that the cost of the engine may be depreciated under section 167.

Deductions are a matter of legislative grace, and the taxpayer must satisfy the specific statutory requirements claimed

to reduce a tax liability. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Section 174(a)(2) permits a taxpayer to deduct currently research and experimental expenditures that are paid or incurred during the taxable year in connection with the taxpayer's trade or business. The term "research or experimental expenditures" is defined in the regulations as "expenditures incurred in connection with the taxpayer's trade or business which represent research and development costs in the experimental or laboratory sense. The term includes generally all such costs incident to the development of an experimental or pilot model, a plant process, or similar property, and the improvement of already existing property of the type mentioned." Sec. 1.174-2(a), Income Tax Regs.; Kollsman Inv. Corp. v. Commissioner, T.C. Memo. 1986-66, affd. 870 F.2d 89 (2d Cir. 1989).

Section 1.174-2(a)(1), Income Tax Regs., provides that the term "research or experimental expenditures", among other things, does not include the costs of acquiring another's patent, model, production, or process. Respondent asserts that this provision precludes petitioners from claiming the cost of the Porsche 928 S4 engine as a research or experimentation expense because the

Porsche engine was a patent or model of Porsche, the manufacturer. The Court finds it unnecessary to pass upon the merits of this argument.

Section 174(c) and section 1.174-2(b)(1), Income Tax Regs., provide generally, in pertinent part, that expenditures for the acquisition of property that is subject to an allowance for depreciation under section 167 are not deductible under section 174, irrespective of the fact that the property may be used by the taxpayer in connection with research or experimentation. However, this portion of the regulations provides further that "If any part of the cost or acquisition * * * of depreciable property is attributable to research or experimentation * * *, see subparagraphs (2), (3), and (4) of this paragraph." Sec. 1.174-2(b)(1), Income Tax Regs. Subparagraph (2) then provides that "Expenditures for research or experimentation which result, as an end product of the research or experimentation, in depreciable property to be used in the taxpayer's trade or business may, subject to the limitations of subparagraph (4) * * *, be allowable as a current expense deduction under section 174(a)." Sec. 1.174-2(b)(2), Income Tax Regs. The referenced subparagraph (4) then provides that the deductions allowable in connection with the property are limited to "amounts expended for research or experimentation", and that amounts expended for research or experimentation do not include the costs of the

component materials of the depreciable property, the costs of labor or other elements involved in its construction and installation, or costs attributable to the acquisition of the property. Sec. 1.174-2(b)(4), Income Tax Regs. An example in subparagraph (4) is that of a taxpayer who undertakes to develop a new machine for use in his business. The taxpayer expends a total of $30,000 on the project, of which $10,000 represents the actual costs of material, labor, etc., to construct the machine, and $20,000 represents research costs that are not attributable to the machine itself. In this example, the $20,000 research costs are deductible, but the $10,000 costs are not deductible and must be charged to the asset account (the machine).

In this case, petitioner's payment of $7,000 for the Porsche engine represented the cost of an asset that was of a character subject to an allowance for depreciation and that was used in connection with research or experimentation. Since the $7,000 was for the acquisition of such an asset, that amount is not deductible as a research or experimentation expense. Sec. 1.174-2(b)(1), (2), (3), and (4), Income Tax Regs. All other expenses petitioner incurred in connection with the enhancement of the engine represented deductible research or experimentation expenses, and, indeed, respondent has allowed those expenses as deductions. For the $7,000 acquisition cost, however, the Court

sustains respondent's determination that no deduction is allowed under section 174(a).

Petitioners contend, alternatively, that the $7,000 cost of the Porsche engine is deductible under section 179. Under section 179, a taxpayer may elect to treat the cost of any section 179 property as a current expense in the year such property is placed in service. Sec. 179(a). The aggregate cost that a taxpayer may deduct under section 179, for the year 1991, may not exceed $10,000.[3] Section 179(c)(1) provides that an election must:

> (A) specify the items of section 179 property to which the election applies and the portion of the cost of each of such items which is to be taken into account under subsection (a), and

> (B) be made on the taxpayer's return of the tax imposed by this chapter for the taxable year.

Petitioners made no election on their income tax return for 1991 to expense the $7,000 under section 179 for the Porsche 928 S4 engine. They are precluded from making that election at this time. Starr v. Commissioner, T.C. Memo. 1995-190, affd. without published opinion 94 F.3d 1146 (9th Cir. 1996).

Petitioners next argue that, if the subject engine's cost cannot be expensed under either sections 174 or 179, the cost

---

[3] The dollar limitation has been increased for subsequent years.

should be capitalized, and petitioners should be entitled to a recovery for depreciation under section 167.  Section 167 provides, in part, for the allowance of a depreciation deduction with respect to "property used in the trade or business".  The Court disagrees with respondent's factual premise.  The engine was acquired by petitioner in March 1991, and the record supports a finding that the research and experimentation was a trade or business of petitioner and was conducted during 1991.  The engine, therefore, was placed in service during 1991. Petitioners, therefore, are entitled to a depreciation deduction for the cost of the engine for 1991.

<u>Decision will be entered under Rule 155.</u>